# JANUARY TERM, 1906.

---

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ADRIAN L. GREENE,
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,                    } JUSTICES.
HON. CLARK A. SMITH,
HON. SILAS W. PORTER,
HON. CHARLES B. GRAVES,

---

ELLA MCBRIDE *et al.* v. JOSEPHINE STEINWEDEN *et al.*
No. 13,897.    (83 Pac. 822.)

SYLLABUS BY THE COURT.

1. BOUNDARIES—*Navigable Stream—Accretion.* Where the Missouri river is designated as a part of the boundary between the states of Kansas and Missouri the middle of the main channel of the river is the boundary-line, and if the river shifts and its course is changed by the gradual process known as accretion the boundary-line will change with the river, and the center of the main channel as the river runs will continue to be the boundary between the two states.

2. WATERCOURSES — *Ownership of the Accretion.* Where the river so changes, the land formed by the gradual and imperceptible accretion from the water belongs to the owner of the shore-land to which it is added.

3. ——— *Island.* In determining whether a formation in a river is an island or a part of the shore-land account should be taken of the size and stability of the formation, its physical features, and the relative size and permanence of the channels around it.

4. ——— *Instruction Defining an Island.* In an instruction relating to an island, among other things it was said: "It may be stated by way of definition that to constitute an island in a river the same must be of a permanent character—not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not a sand-bar subject to overflow by a rise of the river and con-

McBride v. Steinweden.

nected with the mainland when the water is low." *Held,* not error as applied to the facts in the case.

5. EJECTMENT—*Title in a Third Party Not a Defense.* Where the plaintiff in an action of ejectment establishes an interest or title to land paramount to that of the defendant, the latter cannot avail himself of an outstanding title in a third party, although it may be superior to that of the plaintiff.

6. ——— *Evidence—Deed from a Stranger.* A deed from one not shown to have any interest in or connection with the land purported to be conveyed is inadmissible as evidence of title in an action for the recovery of the land.

7. CONVEYANCES — *Meaningless Description — Validity.* An instrument purporting to convey land, in which the description is so vague and uncertain as to be meaningless, and there is nothing in the deed by which the identity of the premises can be ascertained, is void.

8. PRACTICE, DISTRICT COURT.— *Order of Proof — Discretion.* The order in which evidence shall be received must to a great degree be left to the discretion of the court trying the case, and, unless that discretion has been abused, its action furnishes no ground for complaint.

9. WATERCOURSES—*Accretion—Verdict and Evidence.* The findings of the jury that the land in controversy accreted to that owned by the plaintiff are held to be sustained by the evidence.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed January 6, 1906. Affirmed.

*Ryan & Ryan,* and *Jackson & Jackson,* for plaintiffs in error.

*Waggener, Doster & Orr,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a controversy over a tract of land which was formerly the bed of the Missouri river. In 1881 Christoff Steinweden acquired a fractional quarter of section 10, township 5, range 21, on the Kansas shore of the Missouri river, which is designated as lot 3. In 1855 there was a government survey of the Kansas land which fixed the boundaries of lot 3,

and showed that it extended to the Kansas shore of the Missouri river. Southwest of lot 3, and on the opposite side of the river, was land that had been surveyed and designated as section 33, township 56, range 37, in Buchanan county, Missouri. It appears that since 1855 the channel of the Missouri river has moved in a southerly direction from lot 3, and the land formed against lot 3 by the shifting of the river is that which is in controversy. Steinweden, who showed a good paper title, at least, to lot 3, claimed the land as an accretion to lot 3, and Ella McBride claimed it as an accretion to a part of section 33 in Missouri, to which she asserted title under certain conveyances. John McBride, the husband of Ella, occupied the land as a tenant of Steinweden from about 1894 to 1899, when he denied his landlord's title and refused to pay rental. Steinweden brought an action against him to recover the land and obtained a judgment that he was entitled to the land and its possession.

Immediately following that judgment (in October, 1899), McBride entered into a compromise agreement with Steinweden which, among other things, stipulated that McBride should yield immediate possession of the land and any claim of title or ownership in the buildings or the improvements upon it. Without any change of possession his wife, Ella McBride, set up a claim of title to the land under a deed from Anna Smith, executed in October, 1899, purporting to convey a strip of land in section 33 which was formerly on the Missouri shore of the river, and later she claimed under another deed executed to her by John Koch several months after the present action was brought.

Among the points of contention at the trial were the location of the main channel of the Missouri river in 1855, when the Kansas survey was made; the character of the changes in the channel of the river—whether sudden or gradual; and the manner in which accretions were formed as the channel of the river shifted. There was considerable contention, also, as to whether there

was an island in the river near the Kansas shore and opposite the Steinweden land.  From the testimony and the findings of the jury it appears that there was no island near lot 3, but that between 1855 and 1866 a sand-bar formed in the river opposite and near the land, and that for a time there was a channel of the river between the sand-bar and the Kansas shore called the "Indian chute," through which boats and rafts passed in times of high water.  The main channel of the river, however, was between the sand-bar and the Missouri shore.  The sand-bar at times was partly covered with an undergrowth, but it did not rise to the level of the shore-lands, and it overflowed during ordinary high water.  It was shown and found that the alluvial deposits added to lot 3 by the shifting of the river were formed in such a way as to form accretions to that lot.  The jury also found that Steinweden had erected fences on the accreted land, and, besides paying taxes levied against it, had exercised authority and control over it since 1884.  This action was begun in January, 1900, and the verdict and judgment awarded the land in controversy to Steinweden.  Shortly after the rendition of the judgment Steinweden died, and the action and judgment were revived in the names of his widow and children.

In their answers the McBrides objected to the jurisdiction of the court, and asserted that the land in controversy was in the state of Missouri.  This was based on the theory that the "Indian chute" between lot 3 and the sand-bar was the main channel of the river; that the sand-bar was an island in the state of Missouri; and that title to it was in that state.

If Steinweden established a right to the land paramount to that claimed by the McBrides they could not avail themselves of a title in the state of Missouri, or any other third party, although it might be superior to that of Steinweden.  (*Duffey v. Rafferty*, 15 Kan. 9; *Thomas v. Rauer*, 62 Kan. 568, 64 Pac. 80; *Christy v. Scott et al.*, 55 U. S. 282, 14 L. Ed. 422.)

The Missouri river is a navigable stream, and at the place in question is the boundary-line between the state of Kansas and the state of Missouri. In such a case the middle line of the main channel is the boundary-line between the states, and the bed, and also any island between that line and the shore-line, belongs to the state in which it is located. If the boundary river changes its course gradually by the accretive process the boundary-line follows the river and is in the center of the channel, but a sudden change of the channel by the process known as avulsion does not change or affect the boundary-line. The rule was well expressed by Mr. Justice Brewer in *Nebraska v. Iowa,* 143 U. S. 359, 12 Sup. Ct. 396, 36 L. Ed. 186, where he said:

"It is settled law that when grants of land border on running water, and the banks are changed by that gradual process known as accretion, the riparian owner's boundary-line still remains the stream, although, during the years, by this accretion, the actual area of his possessions may vary. . . . It is equally well settled that where a stream which is a boundary from any cause suddenly abandons its old and seeks a new bed, such change of channel works no change of boundary; and that the boundary remains as it was, in the center of the old channel, although no water may be flowing therein. This sudden and rapid change of channel is termed, in the law, avulsion. In Gould on Waters, section 159, it is said: 'But if the change is violent and visible, and arises from a known cause, such as a freshet, or a cut through which a new channel is formed, the original thread of the stream continues to mark the limits of the two estates.' (2 Bl. Com. 262; Ang. Watercourses, § 60; *Trustees of Hopkins Academy v. Dickinson,* 9 Cush. 544; *Buttenuth v. St. Louis Bridge Co.,* 123 Ill. 535, 17 N. E. 439, 5 Am. St. Rep. 545; *Hagan v. Campbell,* 8 Porter [Ala.] 9, 33 Am. Dec. 267; *Murray v. Sermon,* 1 Hawks [N. C.] 56.)

"These propositions, which are universally recognized as correct where the boundaries of private property touch on streams, are in like manner recognized where the boundaries between states or nations are, by prescription or treaty, found in running water. Accretion, no matter to which side it adds ground,

leaves the boundary still the center of the channel. Avulsion has no effect on boundary, but leaves it in the center of the old channel."

(See, also, *Barney v. Keokuk,* 94 U. S. 324, 24 L. Ed. 224; *Jefferis v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872; *St. Louis v. Rutz,* 138 U. S. 226, 11 Sup. Ct. 337, 34 L. Ed. 941; *Water Power Co. v. Water Commissioners,* 168 U. S. 349, 18 Sup. Ct. 157, 42 L. Ed. 497; *Wood v. Fowler,* 26 Kan. 682, 40 Am. Rep. 330; *Peuker v. Canter,* 62 Kan. 363, 63 Pac. 617; *Perkins v. Adams,* 132 Mo. 131, 33 S. W. 778.)

Now there was abundant testimony tending to show that the main channel was southwest of the sand-bar, and that the change in the course of the river was gradual and imperceptible. While the river shifted, and the Kansas shore-line was thereby extended for a distance of about two miles, during a period of fifty years, it was accomplished by the process of accretion, and hence the center of the main channel of the river, as it runs, continues to be the boundary of the state.

It has been questioned whether the accretive theory was applicable to the Missouri river, with its rapid current, crooked course, and unstable banks, but the supreme court of the United States has determined that, although the changes in the channel of that river are greater and more rapid than in some others, the differences are not such as to take it out of the general rule of accretion. (*Jefferis v. East Omaha Land Co.,* 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872; *Nebraska v. Iowa,* 143 U. S. 359, 12 Sup. Ct. 396, 36 L. Ed. 186.)

The exclusion of evidence offered by the McBrides is a matter of complaint. A deed purporting to convey a strip of land in section 33, as designated by the Missouri survey, and accretions, executed by Anna Smith to Ella McBride, was offered, and rightly refused. Anna Smith was not shown to have had any title to, or connection with, the land described in the deed. There was no proof, or offer to prove, that her

deed was a link in a chain of conveyances from any source of title, nor that she had ever been in possession of the land, with or without color of title. A deed from one not shown to have some interest in the land purported to be conveyed is inadmissible in an action for the recovery of the land. (*Bancroft v. Chambers,* 10 Kan. 364; *McKibben et al. v. Newell,* 41 Ill. 461; *Kennedy v. Bogert and others,* 7 S. & R. [Pa.] 97; *Schrack v. Zubler,* 34 Pa. St. 38.) Another deed purporting to have been made by Steinweden to Herman Koch was offered in evidence by the McBrides, and excluded. It had no application to the lands in controversy, as the description was so indefinite as to be meaningless, and the deed was therefore ineffectual. The attempt at description was: "Beginning at the southwest corner of the northwest quarter of section thirty-three (33), in township fifty-six (56), in range thirty-seven (37), thence north on section-line eighty (80) rods to the southwest corner of Allen D. Smith's land; thence east to the Missouri river; thence up the river to the quarter-section line between the northwest and the southwest quarters of said section thirty-three (33); thence east on said quarter-section line to place of beginning." This deed was executed September 3, 1903, and, as will be observed, the call "east to the Missouri river" goes away from the land in question. Then "up the river" leads still farther from the land, and "east . . . to the place of beginning" is not in the direction of the starting-point, and encloses nothing. There is nothing else in the deed which affords means of identification of the land conveyed, and hence the instrument tendered is void. As the Koch deed followed and depended upon the void one made to him, no error was committed in excluding it.

There is complaint that the plaintiff below was permitted to offer testimony in rebuttal which was in fact evidence in chief. It appears that the evidence objected to which related to the sand-bar was mainly re-

McBride v. Steinweden.

buttal in character; but, in any event, the order of proof is a matter largely in the discretion of the trial court, and there is no reason to say that that discretion has been abused in this instance.

Other objections are made to the rulings on the admission of testimony, but they are not deemed to be material.

There is complaint of the instructions, and especially as to the one which defined an island. Among other things the court said: "It may be stated by way of definition that to constitute an island in a river the same must be of a permanent character—not merely surrounded by water when the river is high, but permanently surrounded by a channel of the river, and not a sand-bar subject to overflow by a rise of the river and connected with the mainland when the water is low." In the same connection the jury were told that in considering whether an island in fact existed, or whether the land in controversy was accreted to plaintiff's land, they might "consider the character and extent of the claimed accretion, the character of the timber growth, the relative size and permanency of the channels, if any, around the claimed island, as compared with the size of the stream, the topography of the land in controversy, the character of the soil, the growth, if any, of timber or trees, the testimony of the witnesses, and, in fact, all the circumstances as developed by the testimony." Whether the formation in the river was a sand-bar or an island was a question of fact, and was fairly presented to the jury. It did depend upon the stability of the soil and the size and permanence of the channels around it. (*Railroad Co. v. Schurmeir,* 74 U. S. 286, 19 L. Ed. 74; *Shoemaker v. Hatch,* 13 Nev. 261; Gould, Waters, 3d ed., § 166.) As the court told the jury, account should be taken of the conditions named, and also of a variety of circumstances as to the physical features of the formation, the growth upon it, and whether the water supposed to separate it from the shore-land was there in times

of high water only, or during the ordinary stage of water in the river. In other instructions the jury were advised as to the doctrine of accretion and the manner in which the formations may be made before the same could be regarded as a part of Steinweden's land. There was also another instruction with reference to the volume of water in the so-called "Indian chute" which in effect would separate it from Steinweden's land and preclude any claim to the formations on the west of the chute.

A number of instructions relating to accretions to an island were requested, and their refusal is a subject of complaint. But, since the jury have found as a fact that no island existed in the river opposite the Steinweden land, they are immaterial.

The findings of the jury as to whether the land was accretions to that of Steinweden are vigorously attacked on the ground of non-support in the evidence. While there is much conflict in the testimony, we find no difficulty in saying that there is sufficient testimony to uphold the findings. There is no real controversy between the parties as to the doctrine of accretion, or the rule of law applicable in cases like this. The points of difference are mainly on matters of fact, and these, we think, have been fairly and finally determined by the jury. The judgment is affirmed.

All the Justices concurring.