No. 25,468.

TILLIE CRAIG et al., *Appellees*, v. H. E. LEONARD, *Appellant*.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Boundaries Altered by Changing Channel of River —Change Effected by Avulsion—The Old Channel of River Remains the True Boundary*. In an action to determine the title to land, the boundary of which had been altered by the changing channel of a river, *held*, the evidence warranted a finding that the change was effected by avulsion rather than by erosion and accretion.

2. EJECTMENT—*One in Peaceable Possession of Land*. One in peaceable possession of real property, claiming title thereto, may not be forcibly ejected by another claimant of the title.

3. EJECTMENT—*Error in Assessment of Costs*. Under the facts stated in the opinion, it was error to assess as costs a charge for drawings made by a surveyor to be used as evidence by one of the parties only.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed January 10, 1925. Affirmed in part and reversed in part.

*J. B. Larimer,* and *W. Glenn Hamilton,* both of Topeka, for the appellant.

*A. E. Crane, B. F. Messick,* and *G. L. Bradford,* all of Topeka, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to determine the ownership and right to possession of a small tract of land in a bend of the Vermillion river in Pottawatomie county. The plaintiffs prevailed and defendant appeals.

Prior to 1886 the entire south half of the southwest quarter of the section in controversy was owned by Thomas Huey. It was crossed by the Red Vermillion river, which at that time ran from a northerly to a southerly direction, approximately fifty-five acres of the tract being west and twenty-five acres east of the river. Huey and his wife conveyed that portion of the land on the east side of the river to plaintiffs' grantors, and that portion on the west side to defendant's grantors. Subsequent to these conveyances the river changed its channel to the eastward, leaving more land on the west side and less on the east. The principal question is whether that portion of land in controversy on the west side was formed by erosion and accretion, or whether the changing of the channel of the river was by avulsion. Trial was had to Robert C. Heizer, but before a decision

Craig v. Leonard.

was made Pottawatomie county was removed from his district. It
was thereupon stipulated that Judge M. A. Bender, to whose district
Pottawatomie county was transferred, might make findings of fact
and conclusions of law, determine and decide, and render final judg-
ment in the cause upon the evidence theretofore taken and tran-
scribed. On due consideration, Judge Bender, among other things,
found that:

In the year 1902 a flood caused the channel of the river to change
to the east at least seven rods in one night; that in 1903 a flood
caused the channel to move eastward from eight to twelve rods in
a few days, and that during a flood in 1908 the channel moved east-
ward from eight to twelve rods in two days, and during minor floods
at other times up to 1912 it moved three or four rods; that the wash-
ing and changing of the channel was due to the washing of the sandy
soil underneath, whereby large portions of the bank of the river were
caved as much as one rod in width and several rods in length at one
time. That all of the washing of the floods of 1902, 1903, 1908 and
the minor floods causing the channel to change eastward was in this
manner, except upon one occasion, in a high wind, the washing of the
waves caused a like cave-in of the east bank; that at no time was
there any change in the channel by a gradual and imperceptible
change as in the case of erosion and accretion; but that the changes
were sudden and visible, and in each case consisted of what is
known as avulsion; that since about 1912 the channel has been sta-
tionary; that during the changing of the channel it moved east-
ward about thirty-two rods at the farthest point, thereby cutting
off about twelve and one-half acres of the land that was formerly
east of the channel. That plaintiffs, through their predecessors in
title and inheritance, were the owners of the twenty-five acres lying
east of the channel prior to the changing thereof, and the defendant,
through his predecessors in title, was owner of the west fifty-five
acres. That as the channel of the river changed, the plaintiffs and
their deceased husband and father took possession of the land formed
on the west side of the channel as it moved eastward and attempted
to use and farm it up to what was the original channel until the year
1918, when defendant plowed up and destroyed the crops which
plaintiffs planted, and took possession of said land. That the origi-
nal channel, though filled up, is yet defined by the stumps of trees
that stood on the banks of the river before the changing of the
channel; that in March, 1913, a survey was made of the south half

of the section in which the land in controversy lies, of which the par-
ties to this action had notice; that the outside and center lines of the
south half section were established, and that the survey shows the
channel of the river as it now runs; that according to the plat made
from such survey, the defendant was the owner of all the land west
of the channel, but that no monuments were set; that the defendant
has no right, title or interest in the property east of the original
channel, and that the plaintiffs are entitled to the possession thereof.

It is contended by the defendant that the evidence does not sus-
tain the findings of the trial court, and that inasmuch as Judge Ben-
der did not try the case, but decided it from the record, that this
court may do likewise. We have done so, but arrive at the same
conclusion.

It would serve no useful purpose to here set down the testimony.
It is said in the defendant's brief: "Regardless of what view the
court may take as to the washing away of the east bank, the testi-
mony shows that the formation of the land in controversy was by
a gradual, imperceptible addition to the west bank of the creek."
The evidence quoted by the defendant does not fairly sustain the
statement. This line is quoted: "The old channel kept gradually
filling in." However, in the same connection the witness testified:
"Since it started cutting, the channel washed away dirt on the east
side and the dirt was deposited on the opposite side, making that
ground higher." Another witness testified: "The current of the
river flows close to the east bank, and as it cut away the bank on
that side it filled the land back on the other side." Another witness
said the land on defendant's side of the creek was added on there
from time to time, but this was said in connection with the state-
ment that the east bank always washed away and the land formed
on the west bank. This is the evidence most favorable to the de-
fendant's contention. When it is considered with the overwhelming
evidence that the change of the channel took place during floods and
storms, we arrive at the same conclusion as did the trial court—that
the changing of the east bank was by avulsion and that the additions
to the west side of the stream did not amount to erosion and accre-
tion according to the accepted definition of those terms as frequently
laid down by the authorities. The subject was given serious con-
sideration by this court in *Fowler v. Wood*, 73 Kan. 511, 85 Pac. 763.
In the course of the opinion it was said:

"The courses of rivers being determined by the operation of the elements

Craig v. Leonard.

according to natural laws, they are subject to changes of location. If the change in the position of a navigable river dividing the territory of two states be by gradual and imperceptible encroachment, or insensible recession, so that the process cannot be detected while it is going on, the boundary follows the shifting thread of the stream. But if from storm or flood or other known violent natural cause there be a sudden visible irruption of the water, whereby the lands upon one side are degraded or submerged or a new channel is cut for the stream, the boundary remains stationary at its former location, and the boundaries of riparian owners whose lands have been affected remain unchanged. These principles are elementary in the law. The books teem with learning upon the subject, and the collation of authorities would be a work of supererogation. (*McBride v. Steinweden,* 72 Kan. 508, 83 Pac. 822.)" (p. 521.) See, also, *Wood v. McAlpine,* 85 Kan. 657, 118 Pac. 1060; *St. Louis v. Rutz,* 138 U. S. 226; *Bode v. Rollwitz,* 199 Pac. 692; *The State, ex rel., v. Turner,* 111 Kan. 302, 207 Pac. 223.)

The defendant contends that the plaintiffs are bound by a survey made in 1913. We cannot regard the survey made as controlling. No dispute had arisen between the parties at the time of the survey, but if any had arisen it was not the province of the surveyor to determine it. The surveyor ran the boundaries of the subdivision of the section. He placed no monuments purporting to show a division of plaintiffs' land from that of the defendant. (*Swarz v. Ramala,* 63 Kan. 633, 66 Pac. 649; *Edwards v. Fleming,* 83 Kan. 653, 112 Pac. 836; *Peterson v. Hollis,* 90 Kan. 655, 136 Pac. 258.)

The plaintiffs were clearly entitled to the possession of the property. The defendant admitted that the plaintiffs were in possession, had put a fence around it, and were farming it when the defendant took forcible possession thereof. He took down the fence belonging to the plaintiffs and plowed up the crops which they had planted. Scrambling for possession will not be encouraged.

In *Wilson v. Campbell,* 75 Kan. 159, 88 Pac. 548, it was said:

"One in the peaceable possession of real property may not be turned out unlawfully or by force, even by an owner entitled to possession; it can only be done by due course of law." (Syl.)

In *Doty v. Cone,* 85 Kan. 1, 3, 115 Pac. 977, it was said in the opinion:

"The plaintiff having taken actual possession of the lot, the defendant could acquire no right to it by scrambling for its possession, even if he had the greater right, which does not appear." (See, also, *Whitney v. Brown,* 75 Kan. 678, 90 Pac. 277.)

A question is raised in reference to the expense of a survey made during the trial, which was charged as costs in the case. It appears

that a stipulation was entered into that the plaintiff might have the surveyor who made the survey in 1913 mark his map showing the claims of the plaintiff, and that, as so marked, it might be offered in evidence as showing simply the claims of the plaintiff and in no way to bind or prejudice any claims of the defendant concerning any matters covered by the map as amended or corrected, and that, as so offered, it should be considered by the court as a part of the plaintiff's evidence only. Under the stipulation the plaintiff had certain work done for which a charge was made of $73.73. The survey was not in any way binding upon the defendant. It purported only to show the claims of the plaintiff. We think, under the circumstances, it was not properly assessed as costs in the case. The judgment in so far as this item is concerned is reversed; otherwise it is affirmed.