No. 26,816.

HERCULE PESSEMIER, *Appellee,* v. HERMAN HUPE, *Appellant.*

SYLLABUS BY THE COURT.

1. NAVIGABLE WATERS—*Accretion and Alluvion—Question of Fact.* Whether the course of a stream has been changed by that gradual process known as accretion, or by violent, visible known causes spoken of as avulsion, is a question of fact to be determined by the evidence.

2. SAME—*Abandoned Bed of Navigable Stream—Authority of State to Sell.* Our statute, R. S. 72-2128, does not authorize the state to sell land which is not in the abandoned bed of a navigable stream, between the meandered lines of such stream as shown by the United States survey thereof.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed July 10, 1926. Affirmed.

*W. E. Smith,* of Wamego, *A. E. Crane* and *B. F. Messick,* both of Topeka, for the appellant.

*E. C. Brookens, E. S. Francis, H. L. Hart,* all of Westmoreland, and *Maurice Murphy,* of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for rent on farm land. It was tried to the court. A general judgment was rendered for plaintiff, and defendant has appealed.

The controversy depends upon whether plaintiff was the owner of the farm land in question, and arises in this way: In 1913 the plaintiff purchased lot five (5) and the northeast quarter of section

Navigable Waters, 29 Cyc. pp. 353 n. 98, 354 n. 8, 358 n. 41.

ten (10), township ten (10), range eleven (11), in Pottawatomie county, and the land was conveyed to him by general warranty deed. The Kansas river runs through section ten. At the time the land was originally surveyed by the government in 1862 the Kansas river entered section ten from the northwest on the north line of the section, the east bank being about twenty-five rods west of the center of the section on the north line, and ran through the northwest quarter of the section almost directly south, into the southwest quarter of the section, where it turned east. According to the government survey the northeast quarter of the section was a full 160 acres. Lot five was that tract of land between the west line of the northeast quarter of the section and the river bank. It all lay in the northwest quarter of the section, and was a half mile long north and south and contained about thirty-six acres. From the time of the government survey until plaintiff purchased the land the flow of the river through the northwest quarter of the section had changed to the east until all of lot five, except a few acres in the northeast corner, had become either a part of the river bed or had at some time been overflowed by the water. Much of this change was caused by the floods of 1903, 1905 and 1908. About 1915 the river made a radical change in its course, so that the main flow of the stream entered section ten on the north line twenty-five or thirty rods east of the center of the north line of the section and flowed southeasterly for some distance and then southwesterly through the northeast quarter of section ten, connecting with the old river channel in the southeast quarter of the section. In 1917 plaintiff's father, proceeding under R. S. 72-2128, purchased from the state what was claimed to be a part of the old river bed in the southwest and southeast quarters of section ten, and also 2.49 acres in the shape of a triangle in what was the southwest corner of the northeast quarter and the southeast corner of lot five of section ten. This 2.49 acres is not in the abandoned river bed, between the meandered lines of the stream as shown by the United States survey. Much of lot five and all of that part of the northeast quarter of section ten lying west of the late river channel grew up in willows and brush of various kinds. About 1920 defendant went upon the land and cleared away the brush and put under cultivation about forty acres of this land and raised corn thereon in the farming seasons of 1922 and 1923. It is for the rent of this land that this action is brought. Plaintiff contended he had an agreement with defendant by which he was to farm the land as

Pessemier v. Hupe.

tenant of plaintiff and pay to him the usual crop rent or its value. Defendant denies having made such an agreement. But irrespective of any agreement concerning the matter, if the land really belonged to plaintiff, and was in fact farmed by defendant, he would be liable to plaintiff for the reasonable rental value. (R. S. 67-520; *Mortgage Co. v. Elsea,* 85 Kan. 106, 116 Pac. 249.) Defendant did not claim to own the land. He claimed the right to occupy and farm the land without paying rent to plaintiff, on the ground that he leased from his father the 2.49 acres above mentioned, which his father purchased from the state, and that the remaining portion of the ground which he cultivated belonged to the state as an old river bed, and hence that the plaintiff was not entitled to rent from any of the land farmed by him.

It seems clear from the evidence that when the land was patented by the government there was conveyed to the grantee all of the northeast quarter of section ten and lot five, which was about thirty-six acres of land east of the then bank of the stream and west of the center line of the section, and that this title has passed to plaintiff by mesne conveyances. If plaintiff has lost title to any of this land it has been because of the change of the river bed by erosion; that is, by gradual and imperceptible change. If the change in the channel of the stream was made by avulsion, the title of the plaintiff would not be affected. (*Wood v. Fowler,* 26 Kan. 682; *McBride v. Steinweden,* 72 Kan. 508, 83 Pac. 822; *Fowler v. Wood,* 73 Kan. 511, 85 Pac. 763; *Kregar v. Fogarty,* 78 Kan. 541, 96 Pac. 845; *State, ex rel., v. Akers,* 92 Kan. 169, 140 Pac. 637; *Wood v. McAlpine,* 85 Kan. 657, 118 Pac. 1060; *Craig v. Leonard,* 117 Kan. 376, 232 Pac. 235.) Hence it became a question of fact as to how the change in the channel of the stream came about. Although the trial court made no specific findings of fact, its general judgment in favor of plaintiff can be sustained only upon his finding that the change was made by avulsion. Appellant contends that this view is not supported by the evidence. The evidence upon this question was conflicting. As to part of the change, especially that made in 1915, there is no doubt about that having been effected by a radical change, properly called avulsion. That can also be said of the changes made in 1903, 1905 and 1908. As to the changes made in prior years, the evidence is conflicting. As to a part of the land, the finding of the court might have been the other way, but there is evidence to sustain the finding made, and that is conclusive on this court.

As to the 2.49 acres, which defendant claims to have leased from his father, who had purchased it from the state, appellee contends it was not in the abandoned bed of the stream, between the meander lines as shown by the government survey, hence that the state had no authority to sell it under R. S. 72-2128. This contention is sustained by the evidence.

Finding no error in the record, the judgment of the court below is affirmed.