No. 29,321.

The State of Kansas, ex rel. William A. Smith, Attorney-general, and Will J. French, Auditor of State, *Appellant,* v. Henry Stockman and Nellie Stockman, *Appellees,* et al.

(298 Pac. 649.)

Opinion filed May 9, 1931.

*Roland Boynton,* attorney-general, *Walter Griffin,* assistant attorney-general, and *Randal C. Harvey,* of Topeka, for the appellant.

*William Bowes,* of Alma, for the appellees.

The opinion of the court was delivered by

Sloan, J.: This is an action to quiet the title of the state to a part of the abandoned bed of the Kansas river adjacent to land owned by the defendants, who claim from the meander line to the center line of the old channel. The court decreed about one-half of the land in question to the defendants. From this judgment the state appeals.

The defendants contend that the title to the land adjudged to be vested in them was acquired by virtue of accretion to land owned by them adjacent to the river. The state contends that the river bed was abandoned by avulsion, and that the title to the entire river bed is vested in the state.

The Kansas river prior to 1903 followed the same course as when surveyed by the government in 1862. It passed through township 10, range 12, and formed two large ox-bow loops before leaving the township. The defendants and their predecessors in title were riparian landowners. They owned lots 1 and 2 in section 22, being a narrow strip of land over a half mile long on the east side of the river. Prior to 1903 the main current of the river flowed along the left bank, on the outside of the curve, which was the west boundary line of the land owned by the defendants. This bank was abrupt,

definite, and certain, and there had been no substantial change since the government survey. In the spring of 1903 a flood occurred which covered the whole river bed and adjacent lowlands. As the water receded the river cut straight across the two loops, making a new channel about a mile south of the defendants' land. The cutting of the new channel was sudden and violent. The river before the flood was from 600 to 700 feet wide. After the flood and the cutting of the new channel the old channel continued to carry some water. In 1904 the stream was about 150 feet in width. This, however, grew less and less until at the time of the trial there was only a small creek-like stream about the center of the old channel. As the river bed dried vegetation made its appearance. When high water came it backed up the old channel and deposited dirt, mud and sand which was held by the weeds and willows growing in the bed of the old channel. About the year 1914 the defendants or their predecessors in title began to clear the old river bed of willows and other vegetation and farm it to crops. At the time of the trial the land was farmed to the center line of the old channel.

In the journal entry of judgment the court found:

"2. That the defendant Henry Stockman is the owner of a portion of the real estate in controversy in section 22, township 10, range 12, east of the sixth P. M. in Pottawatomie county, Kansas, hereinafter referred to as 'accretion to lots 1 and 2, section 22-10-12,' and particularly described as follows: . . . [a strip of land commencing along the 1862 meander line, 200 feet in, following the west line of defendant's land toward the center of the old channel] . . ."

"3. The court further finds that the plaintiff, the state of Kansas, is the owner of all of the real estate referred to in plaintiff's petition, except the lands described in finding 2 hereof as 'accretion to lots 1 and 2, section 22-10-12,' and is entitled to judgment quieting its title thereto against all the defendants herein. The court further finds said lands are the abandoned channel of the Kansas river, and that said channel of said river has heretofore been suddenly changed and altered by such stream establishing a new channel by flood and avulsion, and that the auditor of state has power, and it is his duty, to survey and sell the same according to law. . . ."

Whether the course of a stream is changed by accretion or avulsion is a fact to be determined from the evidence, construed, of course, in accordance with the well-established principles of law relating thereto. The evidence clearly establishes the fundamental facts upon which this case must be determined.

First, prior to 1903 there were no accretions to the land of the

defendants. There had been no substantial change in the bank adjacent thereto since the government survey in 1862. In their brief the defendants say:  .

"From 1903 after the flood until June, 1909, the water in what is now claimed to be the abandoned bed of the Kansas river would rise and fall with each rise and fall of the river, which rises and falls affected not only what is now claimed as the abandoned bed of the Kansas river, but also the new channel. It was during this period of time that the claimed accretion was added to lots 1 and 2 now owned by the defendant, Henry Stockman."

Second, in 1903 there was a sudden, violent irruption of the water caused by flood which submerged the lowlands to the west and south of the land in question, whereby a new channel was cut and the old channel deserted. This is not only clearly established by the evidence, but is the conclusion reached by the trial court as set out in the journal entry of judgment as follows:

"The court further finds said lands are the abandoned channel of the Kansas river, and that said channel of said river has heretofore been suddenly changed and altered by such stream establishing a new channel by flood and avulsion."

Third, the evidence shows quite clearly that after the avulsion the old channel was no longer the main stream of the river, but that it rapidly receded and by 1909 was only a small creeklike stream carrying the water of a small creek or creeks which originally flowed into the river. The abandoned river bed was filled in with mud, silt and sand deposited by the backwaters of the new channel in times of high water. These deposits were made on the river bed and did not accrete to the river bank.

The trial judge viewed the premises during the trial of the case, and there was slight evidence tending to show an accretion to the bank. The circumstances, however, surrounding the visit of the trial judge to the premises and his statement with reference thereto are such that the conclusions drawn therefrom are not entitled to any consideration. There is no substantial evidence to establish that there was any accretion to the defendants' land.

The law relating to accretion and avulsion has been quite clearly established in this jurisdiction. In the case of *Fowler v. Wood*, 73 Kan. 511, 85 Pac. 763, this court covered practically the entire field of the law on this subject, and in that case said:

"New formations arising from the bed of a river belong to the owner of the bed, and new formations added to a bar or an island in the channel of a river by the process of accretion or reliction belong to the owner of the island or bar." (Syl. ¶ 5.)

". . . If the channel fill up from the bottom, without accretion to or reliction from either side, the boundary is the center of the channel as it was before the water left it." (Syl. ¶ 9.)

"If from storm or flood or other known violent natural cause there be a sudden, visible irruption of the water, whereby the lands upon one side are degraded or submerged or a new channel is cut for the stream, the boundary remains stationary at its former location, and the boundaries of riparian owners whose lands have been affected remain unchanged." (p. 521.)

"Accretions must consist of deposits formed against, and added to, the bank." (p. 544.)

The case of *Fowler v. Wood*, supra, was followed in *Craig v. Leonard*, 117 Kan. 376, 232 Pac. 268.

The writer in 45 C. J. 530 says:

"Avulsion is the sudden and rapid change of the channel of a stream which is a boundary, whereby it abandons its old and seeks a new bed . . . The slow drying up of the old channel during a period of years after a sudden change does not make the abandonment of the channel of the river any the less an avulsion."

In *Stockley v. Cissna*, 119 Tenn. 135, 137, the ninth section of the syllabus reads:

"Where a river suddenly makes for itself a new channel, there is no less an avulsion because the old channel does not immediately dry up, and ten years or more elapse before all the water therein disappear."

In *A. G. Wineman & Sons v. Reeves*, 245 Fed. 255, 259, the court said:

"A result of such an adoption by the river of a new channel was that the center line of the old channel, which before was a boundary subject to change of location, became a fixed and unvarying boundary, unaffected by changes afterwards occurring in either the new channel or in the old bed of the river around Walnut Bend. The circumstance that, after the change of channel was effected, that old bed was still under water, did not prevent or delay the transformation of the former middle line of the channel around the bend from a shifting to a fixed boundary. That boundary was no longer subject to be affected by changes in the old river bed, or in its shore lines as they formerly existed."

The application of the established rules of law to the evidence in this case brings us to the conclusion that the change in the channel of the river was sudden and rapid—was an avulsion as distinguished from an imperceptible change, or an accretion. It must be controlled by the laws of avulsion. There is no middle course. It is not an answer to say that some water ran in the old channel

until it finished drying up. The cause was the violent irruption of the water cutting the new channel—avulsion; the result, the drying up of the old channel through natural processes. Avulsion leaves property boundary lines undisturbed.

The judgment is reversed, and the cause is remanded with in-structions to render judgment for the state as prayed for in its petition.

HARVEY and SMITH, JJ., not sitting.