No. 40,814

DONALD D. MANVILLE and LORENE F. MANVILLE, *Appellants*, v. LAWRENCE GRONNIGER, HERMAN GRONNIGER and VERNON LAIPPLE, *Appellees.*

(322 P. 2d 789)

Opinion filed March 8, 1958.

*Robert A. Reeder* and *George T. VanBebber*, both of Troy, argued the cause and were on the briefs for the appellants.

*Maurice P. O'Keefe, Sr.*, of Atchison, and *Maurice Pope*, of St. Joseph, Missouri, argued the cause, and *Karl W. Root, Dolan McKelvy, Maurice P. O'Keefe, Jr.* and *Terence D. O'Keefe*, all of Atchison, and *F. H. Dillenback*, of Troy, were with them on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This was an action in ejectment to recover possession of a tract of land situated in Doniphan County, and which lies adjacent to and along the banks of the present channel of the Missouri River a few miles north of St. Joseph, Missouri. Judgment was rendered for defendants, and plaintiffs have appealed.

Although the parties are plural in number, they will, unless otherwise indicated, be referred to in the singular, that is, plaintiff Donald D. Manville and defendant Lawrence Gronniger.

The action was filed in July, 1955.

The amended petition alleged that plaintiff was the legal owner and entitled to possession of a tract of land described as having been formerly located in Buchanan County, Missouri, containing 227.724 acres, being an island in the Missouri River (described by metes and bounds in detail) and some other described land as accretion to the island, and that defendant unlawfully kept plaintiff from possession thereof. The prayer sought to eject defendant.

After denying generally, defendant's answer, in substance, alleged the following:

On December 16, 1938, he purchased from Emil and Blanche Young, the owners thereof, certain described land containing 700 acres, more or less, including all accretions as made to any and all of it by the Missouri River; that at the time he was assured by reputable and competent counsel the property so purchased was Kansas land, and that he took immediate possession thereof and has continued in the adverse, hostile and uninterrupted possession of the property ever since, and is the owner in fee thereof. That in December, 1934, the county court of Buchanan County, Missouri, attempted to sell the land described in plaintiff's amended petition to one Morgan and, in the process, issued a patent thereto to Morgan, all of which was done without lawful authority, and that Morgan later deeded the property to one Pendleton. In 1941 Pendleton, acting under the deed from Morgan, and claiming to be the owner of a part of the property purchased by defendant, moved

on the property and attempted to farm a portion of it until defendant commenced an ejectment action against him in Doniphan County, following which Pendleton moved from the premises and made no further claim thereto. That later Pendleton deeded the property to one Grape, and in June, 1955, Grape deeded defendant's property in controversy herein to plaintiff.

The answer further alleged that if there ever was any authority in the county court of Buchanan County to sell the land described in plaintiff's amended petition and to issue a patent therefor, any rights that plaintiff may have obtained by virtue of the deed from Grape have been extinguished by the ten-year statute of limitation of the State of Missouri; that neither plaintiff nor his predecessors have been in possession of the property in question within ten years prior to the commencement of this action; that the fifteen-year statute of limitation of Kansas has run against any pretended claim that plaintiff may have to the land, and further that defendant had paid taxes to Doniphan County on the land purchased by him, which is the land claimed by plaintiff, ever since he purchased the same in 1938.

For his cross-petition defendant alleged that he and his predecessors in title have been in the open, notorious, adverse, hostile and uninterrupted possession of the land described in plaintiff's amended petition and in defendant's answer for more than fifteen years, paying taxes thereon, and that any pretended rights of plaintiff are barred by both the Missouri and Kansas statutes of limitation, and the prayer sought to quiet title in the property in defendant.

The record is silent with respect to a reply and answer being filed by plaintiff.

Trial was by the court, and considerable evidence was introduced. Much of it had to do with the flow and meanderings of the Missouri River over a long period of years in the immediate vicinity. A number of survey maps were introduced. With respect to the land claimed by plaintiff, his evidence showed the patent of December, 1934, from the county court of Buchanan County to Morgan; a deed to the property from Morgan to Pendleton in November, 1940; a quitclaim deed to it from Pendleton to Grape in 1942, and a quitclaim deed from Grape to plaintiff on June 13, 1955. On June 22, 1955, Grape executed a second quitclaim deed to plaintiff, the purpose of which was to enlarge and correct the description in the deed of June 13th so as to include

any and all accretions to the tract of land described in that deed. His evidence also showed payment of taxes to Doniphan County on certain described land by Grape for the years 1951 to 1954, inclusive, and by plaintiff for the year 1955. The plaintiff testified that defendant was in possession of some of the land described in his amended petition.

Defendant's demurrer to plaintiff's evidence was overruled.

Briefly summarized, defendant's evidence established substantially the following:

In 1936 Emil Young purchased 700 acres of land from one Wiegant. Included in this acreage is the property in controversy. Young paid taxes on it to Doniphan County. In December, 1938, he sold the 700 acres, including accretions thereto, to defendant for the sum of $14,000. Defendant went into immediate possession and shortly thereafter, in conjunction with plaintiff's father who claimed some of the accretions to the land, built a wire fence from the north edge of the "chute" south to the Missouri River, and ever since then defendant has claimed all of the land east of the fence and south along the fence line to the river. In 1940 he rented the land to a tenant named Studemeyer who cleared twenty acres and planted wheat, the seed being furnished by defendant. In May, 1941, Pendleton's brother attempted to assert rights to a portion of the land but left when defendant filed an ejectment action against him. Due to wartime conditions in 1942 and 1943, help was scarce and defendant himself farmed that portion of the land north of the "chute." High water conditions prevailed off and on for the next several years, during which period portions of the land were frequently overflowed. During these years defendant and his brother often went on the land and cleared brush. On several occasions "squatter" trespassers were removed at defendant's instigation. In 1953 he had the land sprayed at a cost of $300. In 1954 he bought a bulldozer for $6,000 and had his tenant clear ninety acres which later were planted to crops. During the entire period from 1939 to 1955 defendant paid taxes on the land claimed by him to Doniphan County.

At the conclusion of the evidence the trial judge, in company with counsel, made a personal inspection of the entire area in dispute.

Special findings and conclusions were not requested, and the court, after having had the matter under advisement, found generally in favor of defendant and rendered judgment accordingly. Plaintiff's motion for a new trial being overruled, he has appealed.

It is contended the court erred in the following particulars:

(1) In not giving proper weight and sufficiency to the prima-facie showing and presumptions arising from the patent, upon which plaintiff's chain of title was based, and to which plaintiff was entitled as a matter of law.

(2) In failing to find that defendant, in making a collateral attack upon the patent upon which plaintiff's title rested, was asserting an affirmative defense, had the burden of proof, and failed to establish by sufficient evidence such collateral attack.

(3) In failing to find that plaintiff's title was superior or paramount to that of defendant.

(4) In finding that the disputed real estate was accretion to the Kansas bank of the Missouri River; or, if not such accretion, then a Kansas island; or, if neither such accretion nor a Kansas island, that defendant's adverse possession was sufficient.

(5) In overruling plaintiff's motion for a new trial.

(6) In admitting the files of a previous case in the district court of Doniphan County in which the present defendant sought to eject plaintiff's predecessors in title, but in which action service of summons was not obtained or the action prosecuted.

(7) In admitting certain receipts for the payment of taxes not shown to be upon the land here in question.

(8) In denying the admission of evidence and testimony concerning the effect of certain geologic formations upon the location of the main channel of the Missouri River.

A short answer to the last-mentioned contention is that the record fails to show that plaintiff produced the excluded evidence at the hearing on his motion for new trial as required by G. S. 1949, 60-3004. Therefore this ground of alleged error presents nothing for review.

With respect to the 6th contention, the argument is that as no summons was ever served on Pendleton's brother in the ejectment action brought by defendant, such action was never "commenced" within the meaning of G. S. 1949, 60-308, which, among other things, provides that an action shall be deemed commenced as of the date of the summons which is served, therefore evidence of the bringing of that action was inadmissible. We find no merit in this contention. In a strictly technical sense, it is true the action was not "commenced," but evidence of its being filed was admissible and competent to show acts and conduct by defendant in support of his theory of adverse possession over the years. Furthermore, the evidence shows that when the sheriff attempted to serve the summons Pendleton "wheeled around and ran."

And neither did the trial court err in admitting into evidence some tax receipts showing payment of taxes to Doniphan County by de-

fendant. Both parties were claiming the same land. The receipts were for taxes on land claimed to be purchased and owned by defendant, and included property the ownership of which was in dispute in this case. The receipts, along with the other evidence, were admissible in support of defendant's theory of ownership.

Narrowed down to their very essence, contentions 1, 2, 3 and 4 really amount to assertions that the trial court was wrong in finding and holding in favor of defendant, that is—the judgment is erroneous.

Any approach to the question necessarily must proceed upon the proposition that error is never presumed and must be affirmatively established by the party alleging it. (*Quivira, Inc. v. Quivira Co., Inc.*, 173 Kan. 339, 245 P. 2d 972; *Vaughn v. Taylor*, 180 Kan. 190, 302 P. 2d 1004.)

The issue here was ownership and right to possession of the land in controversy. The parties presented their respective theories. No special findings were made, but the court found generally in favor of defendant. The firmly-established rule is that a general finding made by a trial court determines every controverted question of fact in support of which evidence has been introduced, and that a general finding raises a presumption that the trial court found all facts necessary to sustain and support the judgment. (*Dryden v. Rogers*, 181 Kan. 154, 157, 309 P. 2d 409.)

Entirely aside from the fact defendant claimed ownership through direct purchase from Young in December, 1938, his further contention was that even though plaintiff had some "rights" stemming from the issuance of the patent to one of plaintiff's predecessors in title, such pretended rights had been extinguished by defendant having held adversely for over fifteen years. (G. S. 1949, 60-304, *Fourth.*) This action was not commenced until July, 1955. Defendant's evidence, which will not be repeated, showed elements of dominion and assertion of ownership from the time of his purchase in December, 1938. Plaintiff received his quitclaim deeds to the disputed land in June, 1955. He acquired no further rights than his predecessors in title possessed. In an ejectment action a plaintiff must rely on the strength of his own title and not on the weakness of his adversary's title.

We feel that we are not called upon to engage in a lengthy discussion of the well-established principles relating to the law of adverse possession. They have been stated over and over again. In

a sense, it may be said that acts, in order to constitute adverse possession, are "relative" to the type and nature of the property and surrounding circumstances; that the acts of dominion must be adapted to the particular land, its condition, locality and appropriate use; that neither actual cultivation nor residence is necessary to constitute actual possession where the property is so situated and is of such a type as not to admit of any permanent useful improvements, and that possession must be as definite as the character of the land will permit. On the general subject matter see *Gildehaus v. Whiting*, 39 Kan. 706, 712, 716, 18 Pac. 916; *Tucker v. Hankey*, 173 Kan. 593, 250 P. 2d 784; *Ames v. Brooks*, 179 Kan. 590, 593, 297 P. 2d 195; 1 Am. Jur., Adverse Possession, § 132, *et seq.*, p. 867.

Considering the facts of this case, the nature, location and type of land involved, and the contention made, it follows there was a basis in the evidence from which the trial court was justified in holding that whatever rights, if any, plaintiff or his predecessors in title had in the land in dispute, were extinguished by defendant's adverse possession of the same for a period of over fifteen years. This fact, standing alone, is sufficient to uphold the judgment rendered.

With respect to plaintiff's final contention that the court erred in overruling his motion for a new trial—nothing further remains to be said. The fact a number of his arguments have not been taken up and discussed in detail does not mean they have been ignored. All have been examined and considered, but we find no error in the record and the judgment is therefore affirmed.