No. 46,014

WALTER RIEKE and ALICE B. RIEKE, *Appellants*, v. J. WILLARD OLANDER, JR., *Appellee*, and ALEXANDER CALDWELL, et al., *Defendants*.

(485 P. 2d 1335)

Opinion filed June 12, 1971.

*John C. Tillotson*, Leavenworth, argued the cause, and *John H. Murray*, Leavenworth, was with him on the brief for the appellants.

*William H. Bates*, Kansas City, Missouri, argued the cause, and *Ethan Potter*, Leavenworth, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, C. J.: This law suit between two neighboring landowners was an action to quiet title to certain land immediately north of the Kansas (Kaw) River in Leavenworth county.

Judgment was for defendant Olander, and plaintiffs Rieke have appealed.

The pleadings—which brought into issue the respective claims of the parties—need not be detailed.

The land in dispute was the *northeast* quarter of section 27-12-22 lying north of the river. Much of it was the result of accretion from periodic flooding—particularly the great flood of 1951. Section 22-12-22 is directly north of section 27, and defendant was the owner of the southeast quarter of that section. Plaintiffs were the owners of the northwest quarter of section 27. It will be seen, therefore, that the quarter in dispute is adjacent to and directly south of the quarter owned by defendant in section 22.

Considerable evidence—including maps and aerial photographs—was introduced. It would add nothing to this opinion to discuss the evidence at length. It established that as far back as the 1930's defendant's father and other predecessors in title had from time to time farmed portions of the property in dispute—depending upon the whims of the river—and that they had cut and removed timber from it and had pastured livestock on it. The "understanding" in the neighborhood was that defendant was the owner. A north-south fence running through the middle of the section had been erected and maintained, but plaintiffs had cut a portion of it.

At the conclusion of the trial the court found that defendant Olander and his wife were the owners of the disputed land—being the northeast fractional quarter of section—and all accretions lying directly south of such fractional quarter extending to the north bank of the river, and that they and their predecessors in interest had been in the open, adverse, continuous and exclusive possession of such land for more than fifteen years under claim of title—and entered judgment quieting their title to the same. In addition, defendant was granted a money judgment for $35.00 for cost of repairing the fence in question.

In this appeal plaintiffs contend the trial court erred in finding that defendant was the owner of the accretion land in dispute by virtue of adverse possession because he was not in continuous, actual, open and notorious possession of it, and that adverse possession could not extend constructively to the newly created accretion lands.

Our law of adverse possession is based on K. S. A. 60-503 which provides that no action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such real property, either under a claim knowingly adverse or under a belief of ownership—for a period of fifteen years. The underlying principle of that statute has long been the law. It has been held many times that adverse possession is largely a matter of intent—coupled of course—with overt acts on the part of claimant; that acts, in order to constitute adverse possession, are relative to the type and nature of the property and surrounding circumstances, taking into consideration the particular land, its condition, character, locality and appropriate use; and that whether one has acquired title by adverse possession is a question of fact to be determined by the trier of the facts, and the determina-

tion so made, if based on substantial evidence, is binding on appeal. See *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784; *Ames v. Brooks,* 179 Kan. 590, 297 P. 2d 195; *Truck-Trailer Supply Co. Inc. v. Farmer,* 181 Kan. 396, 311 P. 2d 1004; *Manville v. Gronniger,* 182 Kan. 572, 322 P. 2d 789 and *Walton v. Unified School District,* 203 Kan. 415, 454 P. 2d 469.

There was much substantial evidence before the trial court to support its finding of adverse possession, and such finding is not to be disturbed on appeal.

On this point—as stated above, plaintiffs also contend that any adverse possession could not extend constructively to the newly created accretion land. The rule is to the contrary. In 2 C. J. S. Adverse Possession § 205, p. 806, it is stated—

"*Accretion.* The title to an accretion follows the title of the riparian land to which it is attached regardless of whether the latter title was acquired by deed or adverse possession. Where accretions are formed to riparian lands held adversely, the title of claimant after the bar of the statute has attached carries with it title to the accretions formed during the statutory period. This is true, however recent the formation."

To the same effect is 3 Am. Jur. 2d Adverse Possession § 203, p. 293, where it is said that the ownership of accretions may be acquired by adverse possession and that one who has acquired title to land by adverse possession is entitled to any accretions thereto, regardless of the time of formation.

Here it is clear that for many years more than the fifteen required, defendant and/or his predecessors in interest occupied, used and possessed the farm all the way to the north bank of the river, including accretions as they periodically occurred.

Plaintiffs' other contention is that the trial court erred in failing to find that they and defendant were owners of the disputed land by reason of their being the sole adjacent riparian owners to the accreted land, and that the court further erred in failing to quiet the title in them and defendant in accordance with such a finding—including apportionment of the accretion land in dispute. In support they cite *Stark v. Meriwether,* 98 Kan. 10, 19, 157 Pac. 438, Ann. Cas. 1918 E 993, in which this court recognized the rule that with respect to accretions—absent such inequalities as to make it inequitable—it is proper to give riparian proprietors a frontage on the new shore proportional to their frontage on the old one, connecting the respective points by straight lines.

As applied to the facts here the *Stark* case is of no help to plain-

tiffs. Extending the straight line constituting the center line of section 27 to the north bank of the river would result in the exact ownership as determined by the trial court. Accretion took place in the west half of section 27 as well as in the east half. Plaintiffs received the benefit of such accretion in the west half and in this action attempt to project eastward onto defendant's land—as well as southward.

Despite the various contentions made in this case—examination of the record discloses that the real underlying dispute appears to be over accretions to defendant's land resulting from periodic flooding of the river—and, as stated—particularly the flood of 1951. We think the conclusions reached by the trial court were correct, and the judgment is affirmed.