211 Kan. 842 (1973)
508 P.2d 930
In the Matter of the Condemnation of Land for Section II, of Lawrence, Kansas, Flood Protection Program CITY OF LAWRENCE, KANSAS, a Municipal Corporation,
v.
VIOLA McGREW. ROBERT E. SCHAAKE and LARRY G. SCHAAKE, Appellants,
v.
VIOLA McGREW, et al., STATE OF KANSAS, et al., Appellees.
No. 46,785
Supreme Court of Kansas.
Opinion filed April 7, 1973.
John C. Gage, of Gage, Tucker, Hodges, Kreamer, Kelly & Varner, of Kansas City, Missouri, argued the cause, and Edward J. Chapman, Jr., of Leavenworth, was with him on the brief for the appellants.
*843 Robert B. Oyler, of Oyler & Paddock, of Lawrence, argued the cause, and James W. Paddock, of the same firm, was with him on the brief for the appellees.
The opinion of the court was delivered by
OWSLEY, J.:
This is an appeal from a judgment quieting title of land on the north bank of the Kansas River in appellees and denying appellants' claim to a portion of a condemnation award thereon.
Appellants Robert E. and Larry G. Schaake are brothers. Their family forbears and predecessors in title originally owned a tract of nearly 300 acres located in the southeast quarter of section 27, and the northeast quarter of section 34, township 12, range 20, in Douglas County. At the time of acquisition (1889 and 1910) all the Schaake land lay south of the Kansas River. At the time of trial only ten acres, more or less, of the described property remained south of the river.
The City of Lawrence condemned an area which was once appellants' property but which, due to the change in the river's location, now lies north of the river and is contiguous to appellees' land. Nearly 200 acres were condemned as permanent and temporary easements for flood control works, and compensation for the easements was $111,158.50. Appellants claim part of the condemned land and a proportionate share of the award even though the land is north of the river and the river is the legally described north and west boundary of their land. Appellants base this claim on the theory that avulsion caused by the 1951 flood changed the location of the river but not the boundary of their land.
Appellees claim the condemned land and award under two theories. Their land has the north bank of the Kansas River as its described south and east boundary and as the river moved south they were entitled to the accretions to their land. In the alternative, they claim title to the condemned land through adverse possession.
The parties do not dispute the fact the condemned land is located geographically within the legal description of appellants' holdings. The river and, hence, the natural boundary between appellants' and appellees' property has moved south and east diagonally through the greater part of two quarter sections of land since 1889, destroying appellants' farm and increasing appellees' farm as it moves. The river at that point curves north and east and according to expert geological testimony presents a classical erosion-deposition situation. Centrifugal force causes the current in the main channel *844 to constantly scour and erode the south bank causing its collapse. The felled portions gradually wash away. While the south bank is being constantly destroyed, sand bars are extended from the north bank by deposits of alluvium from the slower-moving portion of the stream.
There are two legal terms for this change in the river's location. Avulsion is the sudden visible and violent movement of the channel due to storm, flood, or other known violent cause. Accretion is the slow and imperceptible deposit of alluvium or silt on one bank and erosion of the other bank which gradually changes the location of the river channel. (Fowler v. Wood., 73 Kan. 511, 85 Pac. 763; Wood v McAlpine., 85 Kan. 657, 118 Pac. 1060, aff'd on rehearing 86 Kan. 804, 121 Pac. 916.)
When a river or other watercourse is the boundary line between land owned by different parties, the boundary moves as the river's location changes by accretion. If, however, the river suddenly changes its course by avulsion the boundary line remains at the old channel and is forever stabilized there. (Craig v. Leonard., 117 Kan. 376, 232 Pac. 235; Fowler v. Wood., supra; Wood v. McAlpine., supra.)
Appellants claim the 1951 change in the river's location was by avulsion which stabilized their north property line at the location of the south bank of the river prior to the 1951 flood. They concede there was adverse possession in appellees to the north and west bank of the river as it existed prior to the 1951 flood. They argue avulsion was satisfactorily shown and they are entitled to a portion of the condemned land presently north of the river. The trial court held there was no avulsion. What constitutes avulsion is a question of law, but whether avulsion occurred is a question for the trier of fact and the determination so made, if based on substantial evidence, is binding on appeal. (State, ex rel., v. Stockman., 133 Kan. 7, 298 Pac. 649; Pessemier v. Hupe., 121 Kan. 511, 247 Pac. 435.) If there is substantial evidence to support the trial court's findings and conclusion that title vests in appellees by adverse possession, it is of no consequence whether the river moved by avulsion or accretion.
The requirements for vesting title by adverse possession are set out in K.S.A. 60-503:
"No action shall be maintained against any person for the recovery of real property who has been in open, exclusive and continuous possession of such *845 real property, either under a claim knowingly adverse or under a belief of ownership, for a period of fifteen (15) years...."
Whether title is acquired by adverse possession is a question of fact to be determined by the trier of fact. (Armstrong v. Cities Service Gas Co., 210 Kan. 298, 311, 502 P.2d 672; Rieke v. Olander, 207 Kan. 510, 485 P.2d 1335; Manville v. Gronniger, 182 Kan. 572, 322 P.2d 789; Walton v. Unified School District, 203 Kan. 415, 454 P.2d 469.) The trial court made the following findings of fact in support of its conclusion of adverse possession:
"That the defendants, McGrew, et al, and their predecessors in title throughout the years until the present time have followed a consistent course of claiming title to the north and west or left bank of the Kansas River as it proceeded southerly and easterly from lands of record title owned by them. .. . The aerial photo of July 1954 shows extension of farming to south and more timber cut. The aerial photo of August 1959 shows considerable farming on the land in issue. Aerial photo of September 1966 shows much more farming and clearing. The undisputed testimony is that defendants did the farming, cutting of timber and clearing. It is noted in passing that this is low, recently farmed ground in most instances, and that it is subject to frequent flooding. The point being made is that farming as seen in these photos is to the extent possible under the circumstances and the nature of the ground. It shows an intention to occupy to the fullest extent possible. It is also noted in passing that the plaintiffs, Schaake, during all of this interval of time, showed no interest in this ground or laid any claim thereto. It was not until 1967, when they probably heard of the condemnation proceedings, that they made inquiry of the defendants as to their intentions and made an effort to have the tax statements corrected to show that a large portion of their ground was in the river."
In conclusion of law No. 3, the trial court stated:
"From the evidence presented, it is easy to conclude that the defendants McGrew et al consistently followed the river in its movement to the south and east, and as soon as the land was suitable for that purpose, it was utilized by them in connection with their pre-existing land to the north, for farming purposes and for other purposes, indicating a consistent intention to claim ownership to the north and west bank of the Kansas River as against the entire world including the plaintiffs Schaake and their predecessors in title. It is believed that this conclusion is pure surplusage in view of the facts found, but should there be any doubt, there is a plenthora [sic] of evidence of adverse possession in the defendants McGrew et al, as against the Schaakes, sufficient to vest ownership in them should such a conclusion be necessary."
On appeal we must determine if the record shows substantial competent evidence to support the trial court's findings. (Williams v. Benefit Trust Life Ins. Co., 200 Kan. 51, 434 P.2d 765.) This court was considerably hampered in reviewing the evidence because appellants' brief referred to depositions and transcript of the *846 trial rather than the record on appeal, contrary to Rule 8 (b) (4) of this court (209 Kan. xxvi, xxvii). Also, both parties' briefs and the record referred to exhibits not before this court. Only portions of depositions and transcript designated and reproduced within the record on appeal, and only those exhibits which were filed, were considered in reviewing the evidence.
John Vogel and Conrad McGrew, deceased husband of Viola McGrew, purchased the tract of land north of the river in the early 1940's. They and their predecessors in title considered they owned all land south and west of Mud Creek between the railroad and the Kaw River. Mr. Vogel sold his one-half interest to the Millerets in 1955. They farmed the land and Mr. Milleret testified it was his understanding they owned the land from the railroad to the river. Belief of ownership southward as far as the river has been continuous since 1951. It is significant that during that time appellant Larry Schaake was aware of appellees' belief of ownership to the extent he sought them out to discuss it, but did nothing to dissuade them or assert his claim to any land north of the river. Robert Schaake lived out of the state and admitted he had done nothing to disabuse appellees of their belief of ownership until this suit was filed. The belief of ownership was held in good faith by appellees. Inaction on the part of appellants until the condemnation proceedings undermines their claim to good faith belief of ownership. Even if both entertained a good faith belief of ownership to the land, there is no question that appellees were in open possession. Mr. Milleret and Mr. Vogel, his predecessor in title, testified they kept the land posted and tried to keep people out. This testimony was not disputed by appellants. Intent to use all arable land as near to the river as possible is evidenced by appellees' continual clearing and farming. Appellees spent over $12,000 in clearing additional land southward. Experts testified the aerial photos showed trees cleared on what was formerly Schaake land as early as 1954. Evidence supports the trial court's conclusion that land to the river, including the condemned land, was intended for future agricultural use by appellees as soon as it was arable. These acts support a claim of adverse possession. We stated in Rieke v. Olander, supra:
"... that acts, in order to constitute adverse possession, are relative to the type and nature of the property and surrounding circumstances, taking into consideration the particular land, its condition, character, locality, and appropriate use;..." (p. 511.)
*847 One additional point should be clarified. The record discloses that during the period after the 1951 flood to the time of trial, the river moved south and east an additional 600 feet. Since appellants made no effort to prove and do not claim avulsion occurred after 1951, all additions to the land of appellees after 1951 are admittedly the result of accretion. The status of such accretions was decided in Rieke v. Olander, supra. The court approved the following language from 2 C.J.S. Adverse Possession § 205, p. 806:
"`Accretion. The title to an accretion follows the title of the riparian land to which it is attached regardless of whether the latter title was acquired by deed or adverse possession. Where accretions are formed to riparian lands held adversely, the title of claimant after the bar of the statute has attached carriers with it title to the accretions formed during the statutory period. This is true, however recent the formation.'" (p. 512.)
The record and exhibits show sufficient competent evidence to support the trial court's findings and conclusion that title to all the property north of the river is in appellees by adverse possession.
Judgment is affirmed.