No. 40,498

FRANK GRAPE, *Appellant,* v. CHARLES F. LAIBLIN, et al., *Defendants,* RALPH PRICE, *Intervenor, Appellee,* OTTO POHL and GERTRUDE POHL, Additional *Defendants, Appellees.*

(314 P. 2d 335)

Opinion filed July 31, 1957.

J. W. *Lowry,* of Atchison, argued the cause, and *Steadman Ball* and *Wm. E. Stillings,* of Atchison, were with him on the briefs for appellant.

*John S. May*, of Atchison, argued the cause for appellees Otto and Gertrude Pohl, and *Robert F. Duncan*, of Atchison, was with him on the briefs. *G. W. Foley*, of Atchison, argued the cause for intervenor Price.

The opinion of the court was delivered by

FATZER, J.: This action was brought by plaintiff (appellant) to quiet title to certain real property located in Atchison County, Kansas. Only that described as the northwest quarter of section 20, township 7, range 22, is in dispute.

The trial court decreed that plaintiff's title be quieted to that portion of the northwest quarter of section 20 owned by him, except a 30-acre triangular tract in the northeast corner marked in white ink as "disputed area" on the following aerial photograph prepared by the United States Department of Agriculture in 1954.

The "disputed area" is the land involved in this controversy. The trial court found that the defendants (appellees) Otto and Gertrude Pohl were in possession of the disputed area, but it made no order affecting the title to that area other than to reject plaintiff's claim of title, and since the defendants Pohl and intervenor Price did not cross-appeal, the sole question presented is whether plaintiff has title to the disputed area.

Plaintiff claimed title to the disputed area by a deed dated January, 1954, from the executors of one Dugan estate and also from a number of heirs and legatees of one Hiram C. Dugan. The Dugan family had owned the northwest quarter of section 20 since 1865, and in 1919 they quieted title to all of the northwest quarter of section 20 except 30 acres in a square in the southwest corner, which had previously been conveyed to another party. Although the record does not indicate the acreage of the northwest quarter when judgment was rendered quieting title, the parties concede that sometime between 1917 and 1919 most of the northwest quarter of section 20 was in existence. As indicated, the trial court did not decree ownership of the disputed area but found that defendants Pohl were in possession. For the purpose of this opinion, it is unnecessary to set forth the conflicting claims of defendants Pohl and intervenor Price except to note that each claimed title to the southwest quarter of section 17 and ownership to the disputed area as accretions thereto.

The land in question is low river-bottom land adjacent to the Missouri river and has grown up to rank brush, timber, and weeds.

This court has previously described similar land as "low bottom-land, of the peculiar formation which characterizes the valley of the Missouri river in this region, and subject to the vicissitudes which result from the conduct of that capricious stream." (*Fowler v. Wood,* 73 Kan. 511, 513, 85 Pac. 763.) It has been characteristic of this river to change its course in periods of high water by either the process of avulsion or gradual and imperceptible erosion or encroachment. Such action by the Missouri river is the cause of this controversy.

Preliminary to the consideration of plaintiff's contention that the findings and judgment of the trial court were not supported by substantial competent evidence, we note the rule of this jurisdiction that findings of fact made by the trial court upon conflicting testimony will not be disturbed on appellate review where there is competent evidence to sustain the findings. (*Brent v. McDonald,* 180 Kan. 142, 151, 300 P. 2d 396, and cases therein cited.) Plaintiff's objection to those findings and judgment is stated in his brief as follows:

"When all the verbiage is cut away appellant's basic discontent with the trial court's decision and judgment is predicated upon the finding, by that court, that all of the land here in controversy, clearly belonging to the plaintiff's predecessors at the time of the quiet title action in November of 1919, had been cut away by erosion, and had returned by way of accretion of lands formed in the quarter above."

The evidence before the court below consisted of oral testimony introduced by all of the parties, and numerous official charts, maps and aerial photographs prepared by the Surveyor General's Office, the Missouri River Commission, the Corp of Engineers of the United States Army, and the United States Department of Agriculture, the admission of which without formal proof was agreed to by the parties at a pre-trial conference. Neither party requested findings of fact and conclusions of law, but in announcing its decision the trial court made the following findings of fact:

". . . the evidence shows that in 1890 and prior thereto the west (east) boundary of the northwest quarter was the Missouri River. Up near the northeast corner of that quarter section the river was running practically due north and due south. As it got down about a third of the distance from the north line it veered off to the southwest. Now, between 1890 and 1922 the course of the river changed. It was then running from a northwesterly direction to the southeast, and it cut directly across the northeast corner of the northwest quarter that we are talking about. And, of course, to the north it flowed through Section 17.

"Now, along about in 1922 a bar began to form up in the river in Section 17. I might add that between 1890 and 1922 the evidence here is overwhelmingly that the change in the river was one that took place slowly and gradually and imperceptibly.

"Now, around 1922, or perhaps even prior thereto, a bar began to form in the Missouri River up in Section 17, and between 1922 and 1928 this bar grew in size. As time went on this island had accretions to it. The island built up; willows began to grow; and it extended in size until it covered what was prior thereto the Missouri River as it ran across the northeast corner of the northwest quarter that we are talking about in this case, and gradually the Missouri River in the northeast corner of that particular quarter section was entirely covered by this island and what had accreted to it over the years.

". . . The law as laid down in Fowler vs. Wood, 73 Kansas 511, and Intfen vs. Hutson, 145 Kansas 389, would be that when that bar formed up in Section 17, anything that accreted to that bar or to that island would belong to that island. I think in this case the plaintiff lost title to that triangular piece of land by reason of the change in course of the Missouri River. I think the evidence is overwhelming that that change was slow, gradual and imperceptible, and I feel that insofar as this quiet title suit is concerned, that the plaintiff, of course, should have judgment quieting title to all—that is, its title should be quieted to all except the triangular piece of land that lies north and east of slough in the northwest quarter. As to that particular tract of land I think the plaintiff has failed to show any title to that land, and I think the plaintff has failed to show that it has any possession of that land. . . ."

No useful purpose would be served by detailing the evidence before the trial court but suffice it to say we have thoroughly reviewed that evidence and find it ample to support the findings that plaintiff's predecessors lost title to the northeast corner of the northwest quarter of section 20 between 1917 and 1922 by the process of gradual and imperceptible erosion by the Missouri river; that a bar or island subsequently formed in the bed of the river in section 17 which was extended into the original boundaries of plaintiff's land by accretions, and became the disputed area as shown by the aerial map heretofore set forth; and, that plaintiff's northeast boundary remained at the slough which separated his land from the disputed area.

It is well settled at common-law that where the bank of a navigable stream which constitutes the boundary of a tract of land is gradually and imperceptibly changed by erosion, the bank as so changed remains the boundary line of that tract of land. Thus, every owner whose land is so bounded is subject to loss by the same means which may add to his property, and he is without remedy for his loss of such portions as are eroded or washed away or encroached upon by the water. (*Wood v. Fowler*, 26 Kan. 682, 40 Am. Rep.

330; *Peuker v. Canter*, 62 Kan. 363, 63 Pac. 617; *McBride v. Stein-weden*, 72 Kan. 508, 512, 83 Pac. 822; *Fowler v. Wood*, supra, 6 L. R. A. [n. s.] 162, 117 Am. St. Rep. 534; 56 Am. Jur. Waters, § 477, p. 892; 93 C. J. S. Waters, § 80, p. 754.)

Plaintiff contends that this case is controlled by the statement in the opinion of *Intfen v. Hutson*, supra, that where land is lost by avulsion, in order for plaintiff to become the owner of the reappearing land, that land must have reappeared within the limits of the land taken away by avulsion. The contention lacks merit for two reasons: First, plaintiff's predecessors lost title to the northeast corner of the northwest quarter of section 20 by the process of gradual and imperceptible erosion, and that which was formerly their land became the bed of the river, title to which vested in the state (*Wood v. Fowler*, supra), and second, if it be conceded that plaintiff's land was lost by avulsion, the statement relied upon in *Intfen v. Hutson*, supra, would be of no avail to him since the island of which the disputed area became a part, was formed outside the original boundaries of the northwest quarter of section 20.

As in *Intfen v. Hutson*, supra, the situation disclosed by this record is controlled by *Fowler v. Wood*, supra, wherein it was held:

"New formations arising from the bed of a river belong to the owner of the bed, and new formations added to a bar or an island in the channel of a river by the process of accretion or reliction belong to the owner of the island or bar.

"In order to effect a change of boundary, formations resulting from accretion or reliction must be made to the contiguous land, and must operate to produce an expansion of the shore-line outward from the tract to which they adhere." (Syllabus ¶¶ 5, 6.)

Under the facts and the law applicable thereto, the boundary line of the northeast corner of plaintiff's land was the slough existing between that land and the disputed area.

In a quiet title action plaintiff must recover on the strength of his own title and not upon the weakness of his adversary. (*Ordway v. Cowles*, 45 Kan. 447, 450, 25 Pac. 862.) As previously indicated, the trial court concluded that plaintiff had neither title nor possession to the disputed area, and we think that conclusion correct. The question of the ownership of the disputed area has not been resolved, and we make no decision concerning it in this opinion.

Plaintiff further contends that the trial court erred in not permitting him to introduce additional testimony on his motion for a new trial. When that motion was heard the transcript was not available for examination. After having examined the transcript, plaintiff

concedes that the evidence offered would have been merely cumulative. Moreover, plaintiff submitted the case without asking opportunity to produce further testimony, and thus, the issue was closed. This point was decided in *Wagon Co. v. Wilson,* 79 Kan. 633, 101 Pac. 4, wherein it was held:

"One who submits a case tried without a jury, without asking opportunity to procure further testimony, is not in a position to ask as a matter of right a new trial on the ground that he was surprised by the evidence of the adverse party." (Syllabus ¶ 4.)

We have reviewed the record and conclude that plaintiff failed to establish title to or possession of the disputed area. The judgment of the trial court is affirmed.