No. 34,406

THE OHIO OIL COMPANY, *Appellant,* v. E. J. SHAFFER et al., *Appellees.*

(97 P. 2d 99)

Opinion filed December 9, 1939.

*Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, A. M. Buzzi* and *Paul J. Donaldson,* all of Wichita, for the appellant.

*Charles M. Williams, Donald C. Martindell, William D. P. Carey* and *Wesley E. Brown,* all of Hutchinson, for appellee E. J. Shaffer.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the holder of an oil and gas lease from drilling on land and to quiet title of plaintiff to this lease. Judgment was for the defendants, overruling a demurrer of

plaintiff to the answer and cross petition of defendant Shaffer. Plaintiff appeals.

After allegations as to the corporate existence of plaintiff, the petition alleged that on and for many years prior to June 25, 1934, W. M. Hill was the owner in fee simple of lots 8 and H-8, in section 18, township 24 south, range 4 west, Reno county, Kansas; that on June 25, 1934, Hill, a single man, gave an oil and gas lease on lots 8 and H-8 to Charles M. Coats, which lease was for a term of five years; that through assignments, which are not questioned, the plaintiff became the owner of this lease; that lots 8 and H-8 formerly bordered the Arkansas river, but that prior to June 25, 1934, there had been added to these lots by accretion about 12.5 acres of land; that by the terms of the Ohio lease any accretions to lots 8 and H-8 were included in this lease; that sometime prior to June 25, 1934, Hill, with others, gave defendant Shaffer an oil and gas lease covering the 12.5 acres of accreted land just mentioned; that Shaffer entered upon this accreted land and was drilling an oil and gas well in direct violation of the lease of plaintiff.

The prayer of the petition was that Shaffer be enjoined from drilling the well in question and that the title of plaintiff to the lease be quieted.

Defendant Shaffer, in his answer and cross petition, admitted W. M. Hill was the owner in fee of the land in question bordering the Arkansas river which, with other lands, were contained in the oil and gas lease held by plaintiff; that prior to that date about 12.5 acres of land had accreted to lot H-8; that on May 8, 1937, Hill leased this 12.5 acres of land to defendant Shaffer and by virtue of that lease Shaffer was drilling a well on this land; that the drilling operations of defendant were not in violation of the lease of plaintiff, because that lease did not cover any accretions and specifically did not cover the 12.5 acres of accreted land adjacent to lot H-8, and the plaintiff had no interest in the oil and gas underlying this approximately 12.5 acres. The answer and cross petition further alleged that prior to November, 1913, one W. M. Hill owned the real estate in question, a part of which was described as lots 4 and 8 in section 18, township 24, range 4, which adjoined the Arkansas river, a navigable stream; the westerly line was meandered along the river by the United States government prior to 1891; that on the government survey these lots were designated as lots 4 and 8, containing 89.6 acres; that he also owned the accretions thereto;

that in 1913 the legislature of the state of Kansas passed a law providing for the survey of land bordering on navigable streams (Laws 1913, ch. 295); that pursuant thereto, on November 7, 1913, the county commissioners of Reno county, Kansas, ordered the land along the Arkansas river surveyed by the county surveyor; that, carrying out this order, G. L. McLane, county surveyor of Reno county, surveyed the land in question, made a plat of the survey, and certified and recorded it on page 33 of the Accretions Survey Book; that this plat was designated a plat of section 18, township 24, range 4; that it delineated specifically the boundary lines of and showed four lots in section 18, township 24, range 4, designated and containing acreage as follows:

"Lot 4, containing 57.6 acres.
Lot 8, containing 30.5 acres.
Lot D-4, containing 14.3 acres.
Lot H-8, containing 7.17 acres."

The answer and cross petition alleged further that the total acreage of lots 4, D-4, 8 and H-8 was exactly 109.57 acres; that the total acreage of lots 4 and 8, as shown by said plat, was 88.1 acres, whereas the total acreage of lots 4 and 8, according to the original government survey, was 89.6 acres; that on or about October 4, 1929, an additional survey was made of the land in question by L. G. Dale, deputy county surveyor of Reno county, Kansas, and on November 16, 1929, a plat of this survey was recorded, and showed 12.539 acres additional accretions since the McLane survey of 1914; that it is concerning this 12.539 acres additional accretions since the McLane survey of 1914 that there is a dispute in this action; that subsequently, in August, 1933, a survey of the land in question was made and a plat thereof recorded, which showed 17.76 acres additional accretions since the survey of 1929; that on December 12, 1929, Hill executed an oil and gas lease to H. H. Stecher, covering 12.539 acres additional accretions since the McLane survey of 1914, according to the survey of November 16, 1929. The answer and cross petition alleged further that this lease was recorded December 14, 1929, in the office of the register of deeds of Reno county, and that this lease was made soon after the recording of the plat of the survey made in 1929, as above set forth, and was made more than fifteen years after the plat of the McLane survey of 1914 had been recorded; that this lease was released December 24, 1931, but Hill executed a second lease covering the identical land to H. H. Stecher

on February 19, 1932; that this oil and gas lease was for a term of five years from February 19, 1932; that this second lease was made more than two years after the recording of the plat of the above-mentioned survey of 1929 and eighteen years after the recording of the plat of the McLane survey of 1914. The answer and cross petition alleged also that this second lease by Hill to Stecher was made more than two years prior to the time the oil and gas lease was made by Hill to Coats, which is the lease under which plaintiff claims, and this second lease by Hill to Stecher was in full force and effect on June 25, 1934, when the oil and gas lease was made by Hill to Coats; that after the survey of August, 1933, and on September 29, 1933, an oil and gas lease was made by Hill to Stecher covering the more than seventeen acres additional accretions after the survey of 1929, which was for a term of five years from September 29, 1933, and was made and duly recorded and in full force and effect prior to and on the date when the oil and gas lease was made to plaintiff's assignor; that on June 25, 1934, Hill executed the lease, under which plaintiff claims through subsequent assignments, to Charles M. Coats, covering the following-described land situated in Reno county, Kansas, to wit: "Lots 4-D4, 8-H8, all in section 18, township 24 south, range 4 west, and containing 109.57 acres more or less." The answer and cross petition alleged further that this lease was executed almost a year after the recording of the plat of the survey of August, 1933, almost five years after the recording of the plat of the above-mentioned survey of 1929, and more than twenty years after the recording of the plat of the McLane survey of 1914; that further, this lease, under which appellant claims, adopted and followed the descriptive designations of the McLane plat of 1914; that this lease to Coats was executed more than two years after the execution and recording of the second oil and gas lease from Hill to Stecher, covering the 12.529 acres additional accretions since the McLane survey of 1914, which lease was in full force and effect at the time the lease to Coats was executed; that the lease to Coats contained a provision that it covered 109.57 acres, the exact number of acres shown by the plat of the McLane survey of 1914 to be contained in lots 4, D-4, 8 and H-8, as shown on the plat; that the annual delay rental fixed in this lease was $109.57, $1 per acre for the number of acres shown by the recorded plat of the McLane survey to be contained in lots 4, D-4, 8 and H-8; that two amendments to this lease were procured and recorded, one by Coats and the other by plaintiff's immediate assignor; that in the first of these amendments the lease by Hill to

Coats is referred to as a lease covering lots 4 and D-4, 8 and H-8 in section 18, township 24 south, range 4 west, Reno county, Kansas, covering 109.57 acres; that in the second of the amendments the land covered by the lease from Hill to Coats is described as follows: "Lots 4, D-4, 8, H-8, all in section 18, township 24 south, range 4 west, containing 109.57 acres;" that on May 8, 1937, Hill and others executed and delivered to the defendant Shaffer an oil and gas lease covering the following-described tract of land situated in Reno county, Kansas, to wit: "12.539 acres additional accretion, since the McLane survey of 1914 according to the survey made by the Reno county engineer on November 16, 1929, and recorded in book 'A', page 175, in the office of the Reno county engineer, Hutchinson, Kan., the said accretion being located in the southeast quarter of section 18, township 24 south, range 4 west of the 6th principal meridian." The answer and cross petition alleged further that the description of the acreage covered by the lease to E. J. Shaffer is exactly the same as the description of land covered by the lease from Hill to Stecher, which was made February 19, 1932, and was in full force and effect at the time the lease under which appellant claims was made by Hill to Coats.

The plaintiff demurred to this answer and cross petition on the ground that it did not state facts sufficient to constitute a defense to the cause of action pleaded in the petition or to entitle defendants to any affirmative relief. The trial court overruled this demurrer. Hence this appeal.

The argument of plaintiff is that unless excepted or reserved, accretions or the right thereto pass to a purchaser or lessee of riparian land, although not described in the deed or other instrument of conveyance. It is pointed out that there were no reservations in the lease in this case, and it is argued that the lease to lots 8 and H-8 carried with it a lease on the 12.5 acres, which is the land in dispute in this case. In this connection plaintiff relies in the main on what was said by this court in *Cushenbery v. Waite-Phillips Co.*, 119 Kan. 478, 240 Pac. 400. Plaintiff argues that since it is admitted by defendants that title to accretions accrues to the owner of the riparian land, G. S. 1935, 67-202, makes it mandatory that such accretions be included in a grant of the riparian land unless expressly excepted. That section reads, in part, as follows:

"Every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."

Since the case of *Cushenbery v. Waite-Phillips Co.*, 119 Kan. 478, 240 Pac. 400, *supra,* is cited by plaintiff and relied on as controlling in this case, we shall consider it at the outset. The first paragraph of the syllabus is as follows:

"Where lands adjacent to a meandered stream were patented by the government in terms of specified acreages in lots of fractional sections in accordance with the original government survey, whoever holds title under such patents is, by operation of law, owner of whatever lands may have been added by accretion to the original surveyed and patented acreage; and the rule that prevails in some jurisdictions that there is only a rebuttable presumption that accretions are included in an instrument describing the lands in terms of government survey does not prevail in this state."

In that case leases had been given on certain lots along the bank of the Arkansas. The bank of the river was a boundary line of these lots. Each lot was described in the lease by the lot number that had been used to describe it when the original patent was issued in 1871. During the years between 1871 and January, 1923, when the oil leases to the defendants were made, some land had been added to each of these lots by accretion. When the leases to defendants in that case were made the leases had described the number of acres actually in the lot according to the government survey of 1871. No surveys were made between the survey of 1871 and the making of the leases. Some months subsequent to the giving of the leases on the lots to the defendants the owners of the land gave the plaintiff's leases on the accreted land lying between the original meandered line of the river and the bank of the river at the time of the giving of the leases. They claimed they did this on the theory that they had not leased all their lands in January, 1923, to defendants, but only the actual acreage called for by the original United States surveys.

In the actions the plaintiffs alleged that the defendants claimed the oil and gas rights by virtue of their earlier leases. The plaintiffs alleged that the defendants' leases did not cover the accreted lands; that the lessors never intended to lease to defendants the accreted land. The plaintiffs prayed that their lease rights to the accreted lands be quieted and that if the court should hold that as written the defendants' earlier leases did cover the accreted lands, then such leases did not express the agreements of the parties, and that a mutual mistake occurred therein and the instruments should be reformed to recite correctly the several contracts of the parties.

After the plaintiffs introduced their evidence the defendants de-

murred to it. This demurrer was sustained. On appeal the judgment was affirmed. This court said:

"They concede that there is a presumption that all accretions are included and losses by erosion ignored, and that the call for a stated acreage yields to the actual acreage included in the terms of the government survey; but appellants emphasize the point that this presumption is rebuttable by proof of the true intent of the parties to the instrument. A majority of this court decline to recognize or apply that doctrine to the cases at bar and hold without qualification that the tracts defined by the government survey and described in the government patents under which the lessors hold title include the accretions which have attached thereto since the lessors' lands were surveyed and delimited by the government surveyors in 1871 and patented in accordance therewith. So far as concerns the meandering lines along the river bank run by the government surveyors in 1871, it is to be kept in mind that those meandering lines were not the land boundaries. They were merely mathematical data for calculating the then existing but changeable acreage—no more. The true boundaries of the lessors' lands always were the river bank itself, and such was and is the tenor and legal effect of the land patents under which the lessors of these rival litigants hold title. We have no present concern with legal questions which may arise from sudden changes caused by flood, storm or other unusual agency, as affecting boundaries of riparian lands along meandered streams." (p. 483.)

And also—

"A legal description which sufficiently defines a tract of land in terms of government survey, in a government patent, and according to the terms of which the land passes from one fee holder to another and is thus listed for taxation, should be given no variable significance, whether that description appears in a deed, an ordinary lease, an oil and gas lease, or any other instrument in which the property is the subject of any contract or transaction." (p. 484.)

This opinion was by a divided court, three of the justices dissenting. It might be that a different result would be reached now should the question that was before the court in that case be again presented. We are not confronted with that interesting question, however, since we have concluded that the case is not in point here.

In the first place, in the Cushenbery case the lease designated the land it was intended to cover by the lot number that was given it at the original survey. There was no other description except the reference to the number of acres. In this case the lease described the land as lots 8 and 4, and lots D-4 and H-8. The latter two numbers were used to designate two parcels of land that had accreted to lots 8 and 4 between the time of the survey of 1871 and that of 1914. This survey was had pursuant to section 7 of chapter

295 of the Laws of Kansas of 1913. The purpose of this enactment was to cause accreted lands that had been escaping taxation for want of being properly described by deeds of conveyance to be put on the tax rolls. The taking of the lease over twenty-one years after the survey had been made and while it was on record in the office of the register of deeds of Reno county with such a designation of the land to be covered by it was a recognition by the assignor of plaintiff that there had been accretions and that these accretions had been surveyed and were regarded generally as separate from the lot delineated in the survey of 1871. After this survey the original lot had definite limits, and the lot which had accreted to it had definite limits. Furthermore, the lessee adopted the acreage contained in lots 4, 8 and D-4 and H-8, that is, 109.57, and delay rentals have been paid on that acreage. In the second place, in the Cushenbery case the lease under which the defendants held the original lot and claimed the accreted land was executed before the lease to the accreted land was executed, and there had been no leases of any kind to any accreted land before the leases in question had been executed. In other words, there had been no recognition whatever that the accreted land existed except as a part of the original survey. In this case there had been a survey of 1929, when the tract of 12.539 acres, which is the subject of this action, was platted, and one in 1933, when another tract of 17.79 acres was platted. The tract of 12.539 acres had been leased for oil and gas purposes before the lease under which plaintiffs are claiming was executed. A lease on it was on record when plaintiffs' lease was recorded. Under these circumstances we hold that the Cushenbery case is not a controlling precedent here.

The position of plaintiff here is that regardless of the surveys had subsequent to that of 1871, and notwithstanding the leases covering the land in question that were on record when the lease of plaintiff was executed, all the accreted land was covered by the lease for the original lot. If that be the law, then it is not the rule that accreted land belongs to the owner of the land adjacent to the stream, and the owner of lot 8 never did own the accreted lands but only had a right to convey or lease them in a conveyance in which he conveyed lot 8. It seems that the statement of such a proposition is a refutation of it. The fee simple holder of lot 8 acquired the fee-simple title to lot H-8 by accretion, and to the 12.539 acres by accretion, and to the 17.79 acres by accretion. He acquired this title little

by little as the land was added to what he already had. His title, however, was good against all the world. (See 45 C. J. 524.)

The question we have in this appeal is not one of the rights of parties to introduce evidence as to the meaning of the description set out in the lease. Therefore, the statute, G. S. 1935, 67-202, upon which plaintiff relies, is not in point. The lease is just as clear and certain as it could be made. There is no question but that the plaintiff knew or should have known from the records that the lessor had executed leases to the accreted lands before he gave the assignor of plaintiff his lease and had thus seen fit to treat the accreted land and the land covered by the original survey as separate and distinct tracts.

The only question presented by the pleadings is whether a landowner to whose land other land has been added by accretion may sell, convey or otherwise dispose of the accreted land separately from the land covered by the original survey. This question must be answered in the affirmative.

The judgment of the district court is affirmed.

HARVEY, J., concurring.

DRAWING OF PART OF SE ¼ 18-24-4

HARVEY, J. (concurring specially): I concur in the result, but prefer to state my views, illustrated by the accompanying plat. On the point in question, the government survey meandered the banks of the Arkansas river, the fractional subdivisions of the sections being designated by lot numbers. W. M. Hill became the owner of the land. There were accretions to the lots. In 1914, upon orders of the county commissioners, the county surveyor, McLane, surveyed a tract of the accreted land to the south and west of the government meander line, made a plat of the tract surveyed, and gave it lot numbers D-4 and H-8, and this plat was duly recorded in a book kept for that purpose. In 1929 Mr. Hill had deputy county surveyor Dale survey and plat a portion of the accreted land west and south of that shown by the McLane plat, and this survey and plat were duly recorded in the office of the county surveyor. Later, and in 1933, Hill had deputy county surveyor Hefling survey and plat another tract to the west and south of that surveyed by Dale, and this survey and plat were duly recorded in the office of the county surveyor. On December 12, 1929, Hill executed an oil and gas lease covering only the tract of land as surveyed by Dale, and this was duly recorded in the office of the register of deeds. On September 29, 1933, Hill executed an oil and gas lease to the tract of land described by the survey and plat made by Hefling.

On June 25, 1934, while the two leases above mentioned were in full force, Hill executed an oil and gas lease which, by assignment, came to be owned by the plaintiff, which specifically described "lots 4-D4, 8-H8" of the section. It was plaintiff's contention that this description of necessity included the tract of land shown by the survey and plat made by Dale in 1929, and also the land shown by the survey and plat made by Hefling in 1933. I think the trial court correctly held that this contention was not tenable. The fact that this was accreted land did not prevent the owner from platting it and conveying it, or leasing it by the plat descriptions. Had the owner thought the situation justified it, and had he platted the accreted land in city lots and blocks and conveyed them by the lot and block numbers shown by the plat, I think no one would contend that a deed from him of the lots 4 and 8 shown by the original government survey would carry the title of the lot previously conveyed by him on such a recorded plat.

The case of *Cushenbery v. Waite-Phillips Co.*, 119 Kan. 478, 240 Pac. 400, involved no question of the platting by the owner of accreted land and selling it, or leasing it, according to such plat.