### No. 41,882

Alma M. Green, *Appellee,* v. John T. Ector, et al., State of Kansas, *Appellant.*

(356 P. 2d 664)

Opinion filed November 12, 1960.

*Robert C. Londerholm,* Assistant Attorney General, Topeka, argued the cause, and *John Anderson, Jr.,* Attorney General, of Topeka, and *Jack R. Euler,* of Troy, were with him on the briefs for appellant.

*Harry A. Lanning,* of Seneca, argued the cause, and *William M. Drumm,* of Seneca, was with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: Alma M. Green commenced this action to quiet title to certain described land in Doniphan County. Trial was by the court which made findings of fact and conclusions of law and rendered judgment in favor of the plaintiff quieting her title to all of the land in dispute. Following the overruling of the appellant's motions for additional findings of fact, to vacate and set aside conclusions of law, and for a new trial, the state of Kansas has appealed.

The pleadings of the parties will not be referred to except to note the plaintiff's second amended petition alleged she was the owner in fee simple and in actual possession of certain described lots in Sections 4 and 5, Township 1, Range 19, Doniphan County, being the land immediately south of the Kansas-Nebraska state line and lying between Kansas Highway No. 7 (formerly the Chicago, Burlington & Quincy Railroad right of way) and the west bank of the Missouri River "together with all accretions thereto." The land was also described by metes and bounds, and it was alleged the plaintiff owned 6040 feet between the railroad right of way and the west bank of the Missouri River. The appellant, the state of Kansas, one of many defendants named in the action, made the only appearance and it filed an answer and cross-petition denying plaintiff's ownership to the disputed tract, a "pie-shaped" piece of land bounded on the north by the Kansas-Nebraska state line, on the west by a slough, on the east by the present west bank of the Missouri River, containing some 50 to 75 acres, and alleged it was formed as an island from and as a part of the bed of a navigable stream, or, conversely stated, that the disputed tract was not a lawful accretion to the plaintiff's other property. At this juncture we note the "up-river" portion of the slough commences in Nebraska and extends down about two miles across the state line through the property claimed by the plaintiff and connects with the Missouri River at approximately a 25 degree angle. The southern extreme of the land in dispute is the tip or point where the slough connects with the river. Appellant makes no claim to that part of the plaintiff's land west of and between the slough and Kansas Highway No. 7, which it concedes to be accreted lands to the plaintiff's riparian property.

At a pretrial conference the parties stipulated:

". . . the issue in question is whether or not the real estate involved in this action was formed as part of an island from a navigable stream; if this real estate in question is part of such island then the defendant would prevail; if not then the plaintiff would prevail."

The findings of fact and conclusions of law of the district court will not be quoted but suffice it to say it found generally in favor of the plaintiff and against the defendant, that the land was "formed by accretion and was not formed as an island from the bed of the navigable stream of the Missouri River." In harmony with its findings of fact and conclusions of law the district court quieted plaintiff's title to all the lands described in the petition.

The appellant first contends the district court erred in making findings of fact contrary to the evidence and in failing to make a finding as to the condition of the disputed land at the time the slough appeared. Under the stipulation of the parties, the basic question was whether the disputed area was formed as a part of an island from the bed of a navigable stream. The appellant concedes that if the disputed land had first built up above the ordinary high-water mark and against the west bank it would be an accretion to the plaintiff's riparian land, and the fact that a slough subsequently cut a channel through the area cutting off a portion of the accretion and isolating it from the rest of the plaintiff's land would not change her title to the property. The appellant was well advised to make this concession. Under the doctrine of avulsion the sudden cutting or forming of a new channel—in this case a slough—does not change the ownership of the land thereby cut off. (*Wood v. McAlpine*, 85 Kan. 657, 118 P. 1060.)

The appellant principally argues the district court erred in overruling its motion for additional and modified findings that when the slough first appeared in 1926-1928 the area in dispute was a sand bar or shelf which the slough bisected and was then subject to overflow at times of ordinary high water, hence, the tract was formed as an island from the bed of a navigable stream, making it the property of the state of Kansas.

The appellant concedes that whether the land in dispute had built up along the west bank of the river sufficiently high so as to be above the ordinary high-water mark was a question of fact; consequently, the question presented for appellate review is whether there was substantial evidence to support the district court's finding that "*After the land in question was formed* a chute

or slough formed in its present location west of the channel of the Missouri River."

In reviewing the evidence we deem it unnecessary to detail the testimony of each witness, or to include in this opinion official maps offered by each party, and make only a general summarization of the evidence which tends to support the district court's finding (*Fine v. Neale Construction Co.*, 186 Kan. 537, 352 P. 2d 404; *Dennis v. Smith*, 186 Kan. 539, 352 P. 2d 405).

The portion of the Missouri River in question is known as "Squaw Bend," and prior to the stabilization of the channel by the Corps of Army Engineers commencing in the latter part of the 1930's, the area was subject to the vicissitudes of that capricious stream. During the period here discussed the river carried a large amount of suspended silt, especially in high-water periods, and as the river stage would fall the current was retarded or slowed up causing silt to drop and land to be built up. North of the Kansas-Nebraska state line the river tends to run in an easterly direction and then bends south, crossing the state line in a southerly direction. Prior to 1900, or thereabouts, the river ran along the Kansas side of its flood plain so that its west bank was immediately below the Chicago, Burlington & Quincy Railroad right of way located at the base of the Kansas bluffs. In about 1906 land started filling in along the railroad right of way above the Kansas-Nebraska state line and rapidly continued to fill in, out, and down stream, becoming higher each year, causing the river to move east to a point where the channel is presently located. As the river was forced around the newly filled in land at about the state line its current was changed causing eddies to form over the land in question, some covering 80 acres, resulting in the deposit of sand and silt in an uneven fashion.

The land in question first started to form as a small bar which was deposited along the west bank and "just gradually built up." The river has maintained its present location since about 1917 and all of the plaintiff's land had filled in solid—as several witnesses stated, "it was one continuous piece of land from Highway 7 to the river." No slough was there. The soil was a mixture of dirt, sand and silt—the same as it is today. As the land filled in vegetation in the form of willows and grass began to grow and by the early 1920's the willows were about six or seven feet high. Between 1917 and 1919 corn was grown in rows about a mile and a half long where the slough is presently located. In 1920 horses and wagons were

driven out three-quarters of a mile to the river so as to get better sand and two-ton loads were pulled back across the land in question. The plaintiff testified that she did not see the land form between the slough and the river because it was there in 1920; further, that when the river flooded the water covered a part of the land but when the water receded within its banks the land was there, and if the water did not stay up too long it did not kill the vegetation, and as a rule it receded before the vegetation was ruined. There are big cottonwood and willow trees on the east side of the slough which have been there for some time.

The Missouri River has not run through the area since it changed its channel, as previously indicated, and no slough appeared until in the late 1920's. There was testimony that the slough developed after the dikes were built on the Missouri side of the river causing the river to start to swirl on the Nebraska side and commence cutting through the land toward the bluffs. Trail dikes were erected across the head of the slough in Nebraska "to throw the river and keep it from cutting all that land in." One witness testified that from 1934 until 1936 several members of his family lived on the land east of the slough and when he visited them he drove his car across the slough on a road they built. He further testified that when his brother farmed that area, he hauled his implements by team and wagon and seldom had to use a boat, "only in high water" and "when he moved out that time and there was a lot of people moving that time up and down the river." In 1939 the government built a rock dam in the slough about a quarter of a mile north of the Kansas-Nebraska state line, the top of which was six feet above the bottom of the slough, however, at the present time only about fifteen inches of the rock dam is visible. One witness testified that in 1956 he rode out to the area in an automobile and did not recall any "chute," but that they crossed a depression about a foot deep and probably 50 to 75 feet wide. The evidence was undisputed that water did not run through the slough in normal times, but only during periods of high water, usually in the spring and fall.

As previously indicated, the sole issue as stipulated by the parties was whether the area in dispute was formed as an island from the bed of a navigable stream, or, conversely stated, whether the formation in question resulted from accretion to the plaintiff's contiguous land and operated to produce an expansion of the shore line outward from the tract to which it adheres.

The appellant contends the area in question was within the ordinary high-water mark of the Missouri River and that when the slough cut through, an island was formed vesting ownership in the state of Kansas. The contention is not well taken. On that issue, we think there is inherent in the finding that the slough did not form until after the land in question had *formed* is the finding that the area east of the slough was above the ordinary high-water mark of the Missouri River when the slough first appeared. This conclusion is supported by the judgment finding generally that the land was *formed by accretion* and was not formed as an island from the bed of the navigable stream of the Missouri River. The use of the phrase "formed by accretion" in the district court's judgment necessarily embraces a finding that the land in question was above the ordinary high-water mark of the river. Formations resulting from accretion must be made to contiguous land, and of necessity must be above the ordinary high-water mark of a navigable stream. It is well established that a finding of fact necessarily embraced in the general judgment rendered by the district court will not be disturbed if there is some, although controverted, evidence to support it. (*Dryden v. Rogers,* 181 Kan. 154, 309 P. 2d 409; *In re Estate of Julian,* 184 Kan. 94, 334 P. 2d 432.) While the testimony was conflicting on this point, we think the evidence was ample to support the district court's findings and judgment.

In view of the foregoing, the district court did not err in failing to sustain the appellant's motion for additional and modified findings of fact since the appellant did not suffer substantial prejudice by the court's refusal to grant its request (*Stecklein v. Stecklein,* 121 Kan. 490, 247 P. 449, Syl. ¶ 5). See, also, *Marquis v. Ireland,* 86 Kan. 416, 121 P. 486, and *Geier v. Eagle-Cherokee Coal Mining Co.,* 181 Kan. 567, 313 P. 2d 731.

The appellant has not made it to affirmatively appear the district court committed error which would require a reversal, and accordingly, the judgment is affirmed.