No. 52,392

Kaw Drainage District, *Plaintiff-Appellant,* v. Arthur Attwood, *Defendant,* and Marvin Hansford, *Defendant-Appellee, Cross-Appellant.*

(629 P.2d 163)

Opinion filed June 10, 1981.

*Frank M. Rice,* of Jones, Schroer, Rice, Bryan & Lykins, Chartered, of Topeka, argued the cause and was on the briefs for the appellant.

*Robert E. Keeshan,* of Scott, Quinlan & Hecht, of Topeka, argued the cause, and *Jack A. Quinlan,* of the same firm, was with him on the brief for the appellee, cross-appellant.

The opinion of the court was delivered by

Prager, J.: This is an action to quiet title to certain real estate located on the Kansas River and for an accounting for rents and profits received from the property in past years. The action was brought by the plaintiff-appellant, Kaw Drainage District, against the defendants, Arthur Attwood and Marvin Hansford, who, along with their predecessors, had been farming the land for many years. Judgment was entered in favor of the defendant, Arthur Attwood, quieting his title against the drainage district. No appeal has been taken from that judgment. The only parties to the appeal are Kaw Drainage District and Marvin Hansford. The district court entered judgment in favor of defendant Hansford, quieting his title against the Kaw Drainage District.

The primary issue raised at the trial and on the appeal concerns the application of the doctrine of accretion. Although the case was hotly contested, there was no great dispute in the essential facts which are as follows: The plaintiff, Kaw Drainage District,

was organized in 1906 as a drainage district under the Kansas statutes. The district's boundaries have at all times been located north and east of the Kansas River. The southern boundary of the drainage district, by specific description, followed the meanderings of the north bank of the Kansas River. In 1936, the drainage district acquired title by deed to certain land described as part of Lot 4 and the S.E. Quarter of the S.E. Quarter of Section 21, Township 11, Range 14, in Shawnee County. The evidence established that the land purchased by the drainage district was on the east side of the Kansas River, which at that time was located not far to the east of the city of Valencia. The drainage district purchased the land to build a dike on the east side of the river and it did so.

For many years, the Kansas River has been changing its location by moving to the east through the process of accretion and erosion. In 1938, C.C. Belcher, the owner and occupier of land west of the Kansas River described in plaintiff's deed, filed a quiet title suit against the drainage district and obtained a decree quieting his title to that portion of the land described in the plaintiff's deed lying to the west of the Kansas River. Following the quiet title suit, Belcher in 1939 conveyed the property to the defendant, Arthur Attwood. The Kansas River continued its slow and gradual movement to the east. The movement of the river caused an accretion to the Attwood land and an erosion to the land owned by the drainage district on the east side of the river.

Terry Hansford, the father of defendant, Marvin Hansford, owned the property on the west side of the Kansas River located just to the north of the Attwood property. The Hansfords, in the 1940's, proceeded to enter the Attwood accretion land to the south of their property and cleared the land, using a bulldozer. They leveled the land and made it useful for agricultural purposes. It appears that Attwood had no quarrel about the invasion of this land by the Hansfords. An agreed boundary line was established between Attwood and Hansford. The Hansford family then farmed the accretion land until this lawsuit was filed in 1977. The rights of Attwood and Hansford were obviously derived through their predecessor in title, Belcher, and the same basic issues would be present had Belcher retained the land and later become involved in a dispute over ownership of the land with the Kaw Drainage District.

It is undisputed between the parties that the land now in controversy was added onto the former Belcher tract through the process of accretion. There is no contention or evidence that the Kansas River changed its location by avulsion so as to make the doctrine of accretion inapplicable. The trial court specifically found the land of the defendant, Arthur Attwood, to be the same land which belonged to his predecessor Belcher and which was quieted by Belcher in the lawsuit in 1938. This finding of fact is not questioned by the drainage district.

As to the land now occupied and claimed by Marvin Hansford, the trial court found that Hansford had acquired title as against Attwood through adverse possession based upon a belief of ownership and the boundary agreement. The court further concluded that defendant Hansford was entitled to have his title quieted against the plaintiff, Kaw Drainage District, since all of the land he occupied was the result of an accretion to the Attwood property as the Kansas River moved to the east from 1939 until the lawsuit was filed in 1977. The trial court, in its judgment, also ordered the drainage district to turn over to the defendant, Hansford, monies received from the sale of the 1976 and 1977 crops which had been seized by the drainage district.

The basic issue raised by the drainage district is whether the doctrine of accretion is applicable against the claim of ownership by the Kaw Drainage District. Counsel for the drainage district concedes that the defendant, Hansford, would be entitled to prevail as against a private citizen. Likewise, the drainage district does not dispute the fact that the doctrine of accretion is ordinarily applicable to the State of Kansas and its political subdivisions. It is well established that the rules of accretion, reliction, erosion, and avulsion, as determining riparian boundaries, apply to public as well as to private property rights. 78 Am. Jur. 2d, Waters § 420, p. 867; *Oklahoma v. Texas,* 268 U.S. 252, 69 L.Ed. 937, 45 S.Ct. 497 (1925); *Whiteside v. Norton,* 205 F. 5, (8th Cir. 1913); *State v. Merriweather,* 182 F. 457 (1910); *New Orleans v. United States,* 35 U.S. 662, 9 L.Ed. 573 (1836).

The Kansas cases likewise hold that the doctrine of accretion applies to the state. In *Fowler v. Wood,* 73 Kan. 511, 85 Pac. 763 (1906), it was declared that state boundaries change when a navigable river undergoes the process of accretion. Syllabus ¶ 2 of *Fowler* states as follows:

"In Kansas the title to the bed of a navigable river is vested in the state; private ownership in bordering land extends only to the river's margin, and if the position of the stream changes in the manner described . . . the boundary between the land of the state and that of other proprietors follows the movement of the river's edge."

See also *Murray v. State,* 226 Kan. 26, 596 P.2d 805 (1979); *Schaake v. McGrew, et al.,* 211 Kan. 842, 508 P.2d 930 (1973); *Green v. Ector,* 187 Kan. 240, 356 P.2d 664 (1960); *Ohio Oil Co. v. Shaffer,* 150 Kan. 773, 781, 97 P.2d 99 (1939) (title by accretion is good against all the world); *State, ex rel., v. Turner,* 111 Kan. 302, 207 Pac. 223 (1922). In *Murray,* Justice Miller discusses in depth the distinction between a change of riparian boundaries by avulsion and a change by accretion and the effect upon the ownership of adjoining lands.

Counsel for the drainage district concedes that the doctrine of accretion would be applicable in this case as against the State of Kansas or a political subdivision other than a drainage district. He maintains, however, that the doctrine of accretion is not applicable to a drainage district because of certain specific statutes which create and establish the powers of a drainage district. In this regard, the plaintiff relies particularly upon K.S.A. 1980 Supp. 24-453 and 24-454 which provide in part as follows:

24-453. "Every watercourse any section or reach of which runs through or constitutes a boundary of any drainage district shall, within the meaning and intent of this act, be deemed to be within such district for the distance that it runs through or constitutes such boundary thereof; and, whenever any watercourse constitutes a boundary of any district, *such district shall have jurisdiction and control over the whole width of such watercourse between the banks of highwater mark for the distance that such watercourse constitutes such boundary,* except that in cases where drainage districts shall be organized on opposite sides of and bounded by the same watercourse or the watercourse is the boundary of the state of Kansas, the jurisdiction and control of such districts shall respectively extend from the bank on the side of such watercourse on which the district is located to the center of the main channel thereof. When a drainage district has been incorporated under the provisions of this act after the whole or any portion of the channel of any watercourse, title to which is vested in the state of Kansas, which watercourse constitutes a boundary of any such drainage district, shall be abandoned, or no longer used for a channel, the secretary of state shall cause the same to be surveyed and sold in accordance with the provisions of K.S.A. 1978 Supp. 82a-209 to 82a-211, inclusive, and the purchasers of said land so sold shall take fee title subject only to the drainage district's rights to exclusive control and possession for its corporate purposes including impoundment rights, flowage easements and other interests of the drainage district essential to its plan of flood protection or reclamation, and said purchasers shall have the full enjoyment of said lands

subject only to the aforementioned rights of the drainage district." (Emphasis supplied.)

24-454. *"Whenever the channel or any part of the channel of any natural watercourse shall be changed or altered by the establishment of a new channel or otherwise, so that any lands situated between the banks of such watercourse at highwater mark, the title to which is vested in the state of Kansas, shall be abandoned or no longer used for a channel, the title to such lands so abandoned for use of a channel shall immediately vest in the drainage district in which the same are situated,* and such drainage district may sell, convey and give good title thereto by a deed signed by the president of the board of directors of the district and attested by its seal, and such deed, when acknowledged by such president as the act of said district, may be recorded as other deeds except no such sale shall be made until after such lands shall have been appraised, either as a whole or in such tracts as the same may be subdivided into by the board of directors, by three freeholders of the district, and that no sale of such lands or any part thereof shall be made for less than three-fourths of such appraised value thereof." (Emphasis supplied.)

It is important to note that there is nothing in the statutes cited above which mentions the doctrine of accretion or declares that it is inapplicable to riparian land owned by a drainage district. We construe K.S.A. 1980 Supp. 24-453 to vest in a drainage district the authority and power to *control* the beds, channels, and banks of navigable rivers lying between the banks at highwater mark for the purpose of controlling the overflow of water and to prevent injury likely to result therefrom. The fact that a drainage district has the statutory power to perform construction work in the beds, banks, and channels of natural watercourses does not in any way disturb the applicability of the doctrine of accretion to riparian lands owned in fee simple by the district. As in the case of other landowners, as a navigable river slowly changes its position and adds land to property on one side and erodes property on the other side, the accretion belongs to the land to which the accretion is added. At the same time, the bed of the river is owned by the state of Kansas and changes as the river gradually moves.

K.S.A. 1980 Supp. 24-454 does not change the doctrine of accretion. This statute is simply a codification of the common law doctrine of avulsion. It refers to land being abandoned and no longer used as a channel. That is the effect of an avulsion.

We thus hold that the district court correctly found that the doctrine of accretion was applicable to the riparian land owned in fee by the Kaw Drainage District in this case. We further hold that K.S.A. 1980 Supp. 24-453 and 24-454 do not change the doctrine of accretion or exclude its application to riparian property owned

in fee by a drainage district. The defendant Hansford in this case was thus entitled to the decree quieting his title to the disputed land lying to the west and south of the Kansas River. The Kaw Drainage District was entitled to a judgment quieting title to its land lying east and north of the Kansas River. We further find that the district court did not err in ordering the drainage district to turn over to the defendant Hansford the monies obtained from the sale of the 1976 and 1977 crops in the amount of $1,934.81.

In view of our disposition of the accretion issue, we consider it unnecessary to consider the other points raised by the plaintiff drainage district on the appeal. As to the cross-appeal, it should be noted that the defendant, Hansford, filed a counterclaim against the drainage district seeking, in addition to a decree quieting its title, recovery of damages for the trespass to his land committed by plaintiff's employees and a survey crew after the case was filed in 1977. The record discloses no evidence presented by Hansford showing the extent of the damages to his crops as a result of the trespass. Had any such damages been shown, they would have been recoverable by Hansford. In this case, although the trial court might have awarded nominal damages to defendant, Hansford, for the trespass, we find no prejudicial error in its failure to do so in view of the ultimate determination of the case.

The judgment of the district court is affirmed.