Al LeDoux, Director Kansas Water Office 109 S.W. Ninth, Suite 300 Topeka, Kansas 66612-1249
Dear Mr. LeDoux:
You inquire what constitutes state and private ownership along the State's navigable waterways. In addition to this inquiry, you indicate that the Kansas Water Office, as the state's water planning agency, is charged with formulating a state water plan which includes determining access and user rights and responsibility for maintenance and damage to a stream bed, K.S.A. 82a-901a et seq., and as there are several agencies with related statutory duties, you believe a summary of their duties would be helpful to you.
The title to the bed of a navigable river is vested in the State. K.S.A. 70a-106. See Attorney General Opinions No. 82-240; 88-35; 89-5. Private ownership in bordering land extends to the river's margin, but if the stream changes through the gradual process of accretion and erosion, the boundary between the land belonging to the state and that of other proprietors follows the movement of the river's boundary. Kaw DrainageDistrict v. Attwood, 229 Kan. 594 (1981); State v.Akers, 92 Kan. 169 (1914); Dana v. Hurst, 86 Kan. 1947
(1912). Thus, when the previously submerged land becomes uncovered by the imperceptible deposit of alluvium or silt on one bank and erosion of the other bank (a process known as accretion) the riparian owner of the accreted side is the beneficiary of title to the surfaced land. Murray v. State, 226 Kan. 26, 33 (1979) citing Green v. Ector, 187 Kan. 240 (1960); Schaake v.McGrew, et al., 211 Kan. 842 (1973); Rieke v. Olander,207 Kan. 510 (1971). If, however, the change in the boundary of a navigable stream is accomplished by means of a sudden eruption of water and a new channel is cut, the State retains ownership of the abandoned riverbed until the land is disposed of by the State. See K.S.A.82a-201 et seq. (requiring the Secretary of State to procure for the State fee title to the new channel). The State must acquire title to the new channel by purchase or condemnation; and the riparian owners of the old channel are unaffected by the avulsive change. It is critical to note at this point that whether a river changes boundaries by avulsion or accretion is a question of fact. Murray, 226 Kan at 35. The doctrine of accretion is not only applicable to riparian land owned by the State but also to its political subdivisions, including riparian land owned in fee simple by a drainage district, K.S.A. 24-454
notwithstanding. See Kaw Drainage District,229 Kan. at 598 (where the Court construed K.S.A. 24-453 as vesting the power to control the beds, channels, and banks in drainage districts because the statute is a codification of the common law doctrine of avulsion referring to land being abandoned and no longer used as a channel).
In conclusion it is our opinion that what constitutes a state and private ownership interest in the bed and banks of a navigable river changes as the river gradually moves over time, and thus the ownership interests are not fixed.
In regard to your formulation of a water plan, there are several agencies charged with statutory responsibilities involving navigable waterways or streams. On point, K.S.A. 82a-201 et seq. authorize the Secretary of State to settle title to abandoned channels of navigable streams when the channel of a stream has been changed by avulsion or flood. The act authorizes the Secretary of State to obtain title to new channels by purchase or condemnation and to dispose of the abandoned channel by sale, conveyance, grant or patent. K.S.A. 82a-209. Various statutes in this act also direct the Secretary of State to grant specific easements, K.S.A. 82a-212 through 82a-215, and to convey by quitclaim deed the title of an abandoned channel to a city, K.S.A. 1996 Supp. 82a-217. See also 1997 Senate Bill No. 275 (grant of easement to Finney County for stream crossing on Arkansas River, enrolled and presented to the Governor, 1997 Senate Journal 348).
Pursuant to K.S.A. 82a-301 through 82a-314, the Division of Water Resources, Kansas Department of Agriculture regulates the construction of dams, the placement of stream obstructions, and changes in course, current or cross section of the river channel. Typical activities regulated involve construction of dams, bridges, low-water crossings, and sand dredging activities. The Division's regulatory powers are intended to protect the public safety.
K.S.A. 82a-307, 82a-307a, and 82a-308 authorize counties to clean and maintain the banks and channels of streams within definitely established banklines. However, prior to engaging in such cleaning, the board of county commissioners must submit information concerning the proposed banklines in order to obtain the approval of the chief engineer of the Division of Water Resources. K.S.A. 1996 Supp. 82a-309 through K.S.A.82a-311 impose a royalty fee (paid to the Director of Taxation) on the extraction of sand products from the beds of navigable rivers. See also K.S.A. 1996 Supp. 70a-102
and 70a-105 (taking material from any river owned by the State). Water development projects are controlled by K.S.A. 82a-325 through 82a-327 which require that the environmental effect of any water development project be considered before a project is permitted. K.S.A. 82a-405
through 82a-410 govern the construction of dams across a dry watercourse or any stream or watercourse by a landowner under certain conditions and allows an exemption from taxes if the landowner maintains the dam in a condition satisfactory to the chief engineer.
Water compacts are governed by K.S.A. 82a 518 through 82a-529. The State of Kansas is a party to the Arkansas River Compact, K.S.A. 82a-520; the Arkansas River Basin Compact, Kansas-Oklahoma, K.S.A 82a-528; and the Kansas Big Blue River Compact, K.S.A. 82a-529. Administered by the Division of Water Resources is the Water Appropriation Act found at K.S.A. 82a-701 et seq. under which persons may lawfully divert and use water. Bank stabilization projects, K.S.A 82a-1101 et seq., and pump sites and headgates which withdraw the surface flows of a river, and wells which withdraw water from the alluvium of a river, K.S.A. 82a-1201 et seq., require the approval of the Division of Water Resources. Also requiring the Division's approval are the construction of levees and floodplain fills along streams in the State. K.S.A. 24-126.
More generally, the waters and wetlands throughout the United States are protected under Section 404 of the Clean Water Act, 33 U.S.C. § 1344. A permit is required before one may discharge dredged or fill materials into waters of the United States, Section 404 (e) (1). The permits are issued on a state, regional or national basis after a determination by the United States Army Corps of Engineers that the activities are similar in nature and capable of causing or already having only a minimal adverse effect on the environment. A permit may be issued if it will avoid unnecessary duplication of regulatory control exercised by another federal, state or local agency and if the circumstances meet the criteria. 33 C.F.R. § 323.2(n)
Where the Corps of Engineers determines the activity will have a significant adverse impact on the human environment, the Corps prepare an Environmental Impact Statement ("EIS") (44 U.S.C. § 4321 et seq.) and consult with federal and state wildlife agencies. 16 U.S.C. § 661et seq. The Environmental Protection Agency administrator has veto power over a § 404 permit issued by the Corps of Engineers where it is determined that the discharge will have an unacceptable adverse effect on municipal water supplies, shell fish beds and fishery areas, or wildlife and recreational areas (40 C.F.R. § 231). The guidelines for the Corps of Engineers review are set forth in 40 C.F.R. § 230 and may include consideration of "the economic impact of the site on navigation and anchorage." § 404(b); 33 C.F.R. § 320.3(f).
In conclusion, while the Division of Water Resources and several other administrative agencies have the jurisdiction and authority to regulate certain activities that take place within the bed and banks of navigable rivers, such as construction of dams, levees, roads, bridges, pumpsites and wells, none of the agencies may exercise any ownership interest in the bed and banks of navigable rivers. Ownership is vested in the State of Kansas and exercised by legislative action. Additionally, the State's interest in the bed and banks of navigable rivers is not fixed but changes as the river gradually moves.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Villarreal Easley Assistant Attorney General
CJS:JLM:GVE:jm